873 P.2d 861

Aaron U. JONES d/b/a Seneca Livestock Company, Plaintiff–Appellant,

v.

Kootenai County Title Insurance Company, Defendant,

and

RUNFT, LEROY, COFFIN & MATTHEWS, CHARTERED, Defendant–Respondent.

Aaron U. JONES d/b/a Seneca Livestock Company, Plaintiff–Respondent,

v.

Kootenai County Title Insurance Company, Defendant,

and

RUNFT, LEROY, COFFIN & MATTHEWS, CHARTERED, Defendant–Appellant.

Nos. 19336, 19741.

Supreme Court of Idaho, Coeur d'Alene, May 1993 Term.

April 20, 1994.

Rehearing Denied April 20, 1994.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Kellogg, for appellant and cross-respondent. Charles L.A. Cox, Kellogg, argued.

Lukins & Annis, Coeur d'Alene, for respondent and cross-appellant. Charles W. Hosak, Coeur d'Alene, argued.

THE PREVIOUS OPINION ISSUED SEPTEMBER 13, 1993 IS HEREBY WITHDRAWN AND THIS OPINION SUBSTITUTED THEREFOR.

JOHNSON, Justice.

This case concerns the liability of a law firm to a person who loaned money to a client of the law firm. In resolving the appeal, we address issues concerning assumed duty, fiduciary duty, fraud, interference with contract, and statutes of limitations.

We conclude that there are genuine issues of fact concerning the claims for breach of assumed duty and for breach of fiduciary duty. We also conclude that there is a genuine issue of material fact as to when the lender discovered the law firm's alleged fraudulent conduct.

Finally, we conclude that there is no basis for an intentional interference with contract claim against the law firm.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In the spring of 1983, John Runft, a principal in the law firm of Runft, Leroy, Coffin & Matthews, Chartered (the law firm), contacted Aaron U. Jones concerning potential investment and participation in a business venture called the North Idaho Jockey Club (NIJC). Richard Sigismonti and John Kundrat were principals in NIJC, which they formed for the purpose of building and operating a horse racing track in the Coeur d'Alene, Idaho area. Runft was NIJC's attorney and knew Jones through prior legal representation and business dealings.

In June 1983, Jones met with Sigismonti and Runft to discuss Jones's possible involvement with NIJC's development of the race track and to view two parcels of property that NIJC wanted to purchase as a location for the track. After the meeting, Jones stated that he was unwilling to participate directly in NIJC but indicated that he would consider loaning NIJC money to purchase the properties, if the loan were adequately secured. Jones stated that he would consider a loan proposal put together by Runft, "if Runft thought it would fly," but did not want Runft to be his attorney in this matter. Sigismonti agreed to pay Runft's fees for putting a loan proposal together.

On July 29, 1983, Runft sent Jones a letter (the July 29 letter) outlining the terms and security for the proposed loan. According to the July 29 letter, Jones was to lend NIJC $420,000 for the purchase of two tracts of land to be used by NIJC for the construction of the race track. As security for the loan, NIJC was to give Jones a promissory note, a first mortgage on one of the parcels of land, a second mortgage on the other parcel of land, personal guarantees from Sigismonti and Kundrat, and an "assignment for security purposes" of Sigismonti's and Kundrat's partnership interests in the Pinecrest Hospital in Coeur d'Alene, Idaho (the Pinecrest assignment). The crux of this case is the closing of the purchase of the properties by NIJC (the real estate transaction), in which the money loaned to NIJC by Jones (the loan

money) was disbursed without the Pinecrest assignment.

Sometime prior to the July 29 letter, Jones gave Sigismonti $100,000 "good faith" money. Sigismonti transferred this money to Kootenai County Title Insurance Company (the escrow company) along with escrow instructions directing the escrow company to hold the money pending the closing of the real estate transaction. The July 29 letter recognized this transfer and enclosed a copy of the escrow instructions. The escrow instructions were in the form of a letter addressed to the escrow company and signed by Sigismonti on behalf of NIJC. The escrow instructions directed the escrow company to hold the loan money until certain documents, including the Pinecrest assignment, were "executed and/or recorded."

Runft sent a letter dated August 6, 1983 (the August 6 letter) to Bill Addison, Jones's employee who was handling the loan for Jones. The August 6 letter purported to respond to phone conversations between Runft and Addison and instructed Jones to send Runft a check for $320,000, made payable to NIJC and Runft as attorney, along with instructions directing Runft to "transact the check and pay the proceeds thereof into the closing along with the $100,000 presently in trust with" the escrow company. The August 6 letter also stated that Runft was going to visit the escrow company on August 10, 1983, when he would place "all" documents in trust with the escrow company "pending closing," and that it appeared all matters set forth in the July 29 letter would be in place by August 10, 1983.

In a letter dated August 5, 1983 (the August 5 letter), Addison sent Runft a check for $320,000 made payable to NIJC and Runft, as attorney. The August 5 letter, which was addressed to Runft, stated: "Your responsibility is to handle the transaction in the best interests of Aaron U. Jones."

On August 10, 1983, Runft met with the escrow company concerning the closing of the real estate transaction and the disbursement of the loan money under the escrow instructions. Although the closing of the real estate transaction was originally scheduled to take place on this date, due to a delay

in procuring city approval for extending sewer lines to the properties, the closing did not take place until September 1, 1983. On September 1, 1983, NIJC gave the escrow company written acknowledgment that the city had accepted NIJC's sewer proposal and that this acceptance fulfilled the directions in the escrow instructions. Runft dictated this letter at the escrow company and directed an officer of NIJC to sign it. The escrow company disbursed the loan money to close the real estate transaction without the Pinecrest assignment.

NIJC later defaulted on the loan. Jones foreclosed on the mortgages that were given as security for the loan. Sigismonti and Kundrat each declared bankruptcy as a result of NIJC's failure and did not fulfill their personal guarantees to pay back the loan money.

In August 1986, Jones sued the escrow company, alleging that the escrow company improperly disbursed the loan proceeds. In his deposition taken in this case on August 11, 1988, Thomas S. Rogers, an officer at the escrow company, testified that sometime between the end of July and August 12, 1983, Runft told Rogers that the escrow company should disburse the loan proceeds held in trust without being concerned about the Pinecrest assignment. Rogers testified Runft told him that Runft was handling this portion of the transaction. On August 20, 1988, Jones joined the law firm as a defendant. The claims asserted by Jones against the law firm that are relevant to this appeal include: (1) breach of an assumed duty or contract in favor of Jones; (2) breach of a fiduciary duty to Jones; and (3) fraud.

The law firm filed a number of summary judgment motions. One sought dismissal of all Jones's claims on statute of limitations grounds. The trial court denied this motion with regard to the assumed duty claim, the fiduciary duty claim, and the fraud claim.

The law firm then challenged the merits of the assumed duty and fiduciary duty claims, alleging that summary judgment was appropriate because Jones knew Runft was acting as NIJC's attorney throughout the transaction. The law firm reasserted the challenge to the fraud claim on statute of limitations grounds. The trial court granted summary judgment in favor of the law firm on all of these issues. The trial court certified its order for appeal pursuant to I.R.C.P. 54(b), and Jones appealed.

During consideration of the law firm's motions for summary judgment, the trial court concluded that Jones's allegations against the law firm contained a "latent cause of action" for intentional interference with contract. Runft did not file an answer to the intentional interference with contract claim, but moved for summary judgment on this claim alleging that there were no genuine issues of material fact concerning the claim and that the statute of limitations barred Jones from making the claim. During the appeal of the partial summary judgment on the assumed duty and fiduciary duty claims, this Court issued an order granting the trial court limited jurisdiction under I.A.R. 13.4 to decide the law firm's motion for summary judgment on the intentional interference with contract claim. The trial court denied summary judgment. This Court granted the law firm permission to appeal this order and consolidated the two appeals.

## II.

### THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING THE BREACH OF ASSUMED DUTY CLAIM.

■ Jones asserts that there is a genuine issue of material fact concerning whether the law firm voluntarily assumed a duty to act in Jones's behalf. We agree, and conclude that there are other genuine issues of material fact concerning whether the law firm is entitled to summary judgment based on the statute of limitations.

■ Jones's complaint refers to a breach of an "assumed duty or contract." A claim for breach of an assumed duty is a negligence action where the duty of care results from a voluntary undertaking. *Bowling v. Jack B. Parson Companies*, 117 Idaho 1030, 793 P.2d 703 (1990). A voluntary duty is distinct from any other duty the party may

have as a result of another undertaking or relationship.

The law firm argues that there are no facts to support a determination that the law firm assumed any duty towards Jones. In support of this assertion, the law firm submitted evidence that Jones and Addison were both aware that Runft was acting as NIJC's attorney and that they knew Runft was not acting as Jones's attorney. Runft's status as NIJC's attorney, however, does not entitle the law firm to summary judgment on a claim for breach of an assumed duty, if there is a genuine issue of fact whether Runft undertook a separate duty on the behalf of Jones. We conclude that there is a genuine issue of material fact concerning this claim.

 In opposition to the law firm's summary judgment motion, Jones contends that the August 5 letter, which instructed Runft to handle the transaction in Jones's best interests, along with Runft's endorsement and delivery of the $320,000 check to the escrow company without communicating to Jones that Runft would not handle the transaction in Jones's best interests create a genuine issue of material fact. Concerning this evidence, the trial court concluded:

> Ordinarily, a showing that such a charge was communicated and not thereafter specifically repudiated would imply an acceptance thereof, and if acceptance was denied a fact issue would thereby be raised. While such a fact would clearly be material, the Court here finds that the issue thus raised is not *genuine.*

The trial court then concluded that in light of undisputed evidence Jones and Addison knew Runft was not acting as their attorney, the August 5 letter could not present an issue that was "genuine." In effect, the trial court weighed the evidence presented on summary judgment, rather than liberally construing the disputed facts and drawing all reasonable inferences in favor of the party resisting the motion. *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991). In considering a summary judgment motion, it is not the function of the trial court, or of this Court, to weigh the evidence.

Jones argues that Runft assumed a duty to act on behalf of Jones "contractually or oth-erwise." The August 5 letter and Runft's failure to repudiate the direction in this letter for Runft to act in Jones's best interests create a genuine issue of material fact whether Runft contractually assumed a duty.

 The statement in the August 5 letter can be viewed as an offer for Runft to enter a unilateral contract. Although the breach of an assumed duty claim sounds in tort, evidence to support the existence of an assumed duty can be contractual in nature.

> A contract may ... create a state of things which furnishes the occasion for a tort. If the relation of the plaintiff and the defendants is such that a duty to take due care arises therefrom irrespective of contract and the defendant is negligent, then the action is one of tort.

*Taylor v. Herbold,* 94 Idaho 133, 138 483 P.2d 664, 669 (1971) (citation omitted).

 The law firm argues that the August 5 letter can not be used as evidence of an assumed duty because the letter was written by Addison and the request in the letter that Runft handle the transaction in the best interests of Jones was never communicated to Jones. It is not required, however, that Jones personally knew of Addison's direction to Runft. Runft does not dispute that Addison was Jones's employee and agent or that Addison had Jones's authority to act on behalf of Jones in the loan transaction. Unless Addison's actions exceeded the scope of his authority, Addison's actions are sufficient to bind Runft to fulfill any duty toward Jones that Runft had assumed.

Liberally construing the facts in favor of Jones and making all reasonable inferences in his favor, we conclude there is a genuine issue of material fact whether Runft undertook a voluntary duty to act in Jones's best interests in handling the transaction. Runft's failure to repudiate the unilateral offer contained in the August 5 letter, and his subsequent endorsement and transfer of the $320,000 check to the escrow company creates a genuine issue of material fact concerning his acceptance of this offer.

 Runft asserts that even if a genuine issue of material fact exists concerning the

assumed duty, the statute of limitations bars this claim. As we have discussed above, a breach of an assumed duty claim is a negligence action. Because there is no statute of limitations specifically governing negligence actions that do not involve personal injury or malpractice, we apply the four-year statute of limitations found in I.C. § 5–224. *Hoglan v. First Sec. Bank of Idaho,* 120 Idaho 682, 819 P.2d 100 (1991). To determine whether this statute of limitations bars the claim, we must determine when the first negligent act occurred. *Id.* at 685, 819 P.2d at 103. This analysis focuses upon the acts complained of and does not require an analysis of when the plaintiff *discovered* either the acts complained of or the damage resulting from those acts.

■ Jones's claim for breach of an assumed duty alleges that Runft breached an assumed duty to act in Jones's best interests by modifying portions of the escrow instructions to allow release of the loan proceeds without the Pinecrest assignment. Therefore, the act of negligence of which Jones complains is Runft's allowing the escrow company to close the real estate transaction without the Pinecrest assignment. The closing and the release of the loan proceeds occurred on September 1, 1983. This action commenced against the law firm on August 20, 1988, would be barred by the statute of limitations, unless the application of the "some damage" rule dictates otherwise.

In *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), the Court stated:

It is axiomatic that in order to recover under a theory of negligence, the plaintiff must prove actual damage. As a general rule "the statute of limitations does not begin to run against a negligence action until some damage has occurred." W. Prosser, Handbook of the Law of Torts § 30 (4th ed. 1971) (footnote omitted).

*Id.* at 254, 678 P.2d at 46.

The statute under consideration in *Stephens* was I.C. § 5–241, which provides that a tort action arising out of the design or construction of improvement to real property will be deemed to have accrued and the statute of limitation shall begin to run six years after the final completion of construction, if the action has not previously accrued. Since *Stephens,* the Court has applied the some damage rule in a succession of professional negligence cases in which I.C. § 5–219(4) was at issue. *See Chicoine v. Bignall,* 122 Idaho 482, 483–487, 835 P.2d 1293, 1294–1298 (1992). Because the trial court dismissed Jones's assumed duty claim on grounds other than the statute of limitations, the court had no occasion to address when Jones first suffered some damage.

Jones asserts that the law firm is estopped from asserting that the statute of limitations bars the assumed duty claim. We do not address this issue, because it is premature. Whether the trial court needs to address estoppel depends on the resolution of the merits of the breach of assumed duty claim, or when Jones suffered some damage, or both.

## III.

## THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING THE BREACH OF FIDUCIARY DUTY CLAIM.

■ Jones asserts that a genuine issue of material fact exists concerning whether Runft violated a fiduciary duty toward Jones. We agree, and conclude that there are other genuine issues of material fact concerning whether the statute of limitations precludes Jones's assertion of this claim.

The trial court concluded that although Runft may have been acting as a depository of funds on behalf of Jones, any fiduciary duty arising from this action was fulfilled by Runft when the check was delivered to the escrow company.

■ We conclude that there is a genuine issue of material fact whether Runft breached a fiduciary duty he owed to Jones. Although there was not a formal escrow agreement between Jones and Runft, a fiduciary duty may stem from informal actions and agreements between the parties. In *Stearns v. Williams,* 72 Idaho 276, 288, 240 P.2d 833, 840–41 (1952), the Court stated:

A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence.

■ By agreeing to receive Jones's $320,-000 jointly with his client, Runft became, in essence, an intermediate escrow holder of the loan money. The fact that Runft was acting as NIJC's attorney at this time did not relieve Runft of his fiduciary duty toward Jones in handling the loan money. In *All American Realty Inc. v. Sweet*, 107 Idaho 229, 687 P.2d 1356 (1984), the Court held that summary judgment in favor of an attorney who acted as an escrow agent and closing agent in a real estate action was not proper because there was a question of fact concerning whether the attorney violated the escrow instructions. Unless it is undisputed that Runft acted in accordance with any duty he assumed in handling the money, it is not proper to grant summary judgment.

■ Runft's delivery of the funds to the escrow company does not discharge the fiduciary duty alleged by Jones. Jones contends that Runft was to hold the funds "pending the closing of the transaction." If Jones entrusted Runft with holding the funds until the closing of the real estate transaction, it would be illogical to allow Runft to discharge a fiduciary duty to Jones by merely delivering the check to the escrow company prior to the closing. This would undermine the reason Jones entrusted Runft to hold the funds. Therefore, we conclude there is a genuine issue of material fact concerning Runft's breach of a fiduciary duty he had to Jones.

■ The law firm asserts that even if a genuine issue of material fact exists concerning breach of a fiduciary duty, we should uphold the trial court's summary judgment on this claim based on the statute of limitations. Runft argues that we should characterize the breach of fiduciary duty claim as a professional malpractice claim and apply the two-year statute of limitations of I.C. § 5–219(4). Runft cites *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989) in support of applying I.C. § 5–219(4) in this case. Although the claims set forth against the attorney in *Griggs* are factually similar to the claims brought against Runft in this case, *Griggs* does not resolve the statute of limitations issue presented here. *Griggs* concerned summary judgment in favor of a third-party defendant in a claim for indemnity or contribution to a third-party plaintiff. The attorney in *Griggs* stipulated, for summary judgment purposes, that he was hired by the third-party plaintiffs to handle the loan closing. The Court held that the only valid claim alleged by the third-party plaintiff was a claim of malpractice and applied the professional malpractice statute of limitations contained in I.C. § 5–219(4). In this case, the parties agree that Runft was not Jones's attorney. Therefore, there is no basis for applying I.C. § 5–219(4).

■ Jones's claim for breach of fiduciary duty is not covered by any of the other specific statutes of limitations. Therefore, we apply the four-year statute of limitations contained in I.C. § 5–224. As in the case of the assumed duty claim discussed above, a claim for a breach of a fiduciary duty is a negligence action in which the duty to act is created by the relationship between the parties. As a negligence action, we must analyze when the first act of negligence occurred. As in the case of the assumed duty claim, the first act of negligence occurred at or before the release of the loan proceeds on September 1, 1983. This is more than four years before Jones sued the law firm. Again, however, as in the case of the assumed duty claim, the trial court had no occasion to address when Jones first suffered some damage.

Jones also asserts that the law firm is estopped from asserting that the statute of limitations bars the fiduciary duty claim. We do not address this issue, because it is premature. Whether the trial court needs to address estoppel depends on the resolution of the merits of the breach of fiduciary duty claim, or when Jones suffered some damage, or both.

## IV.

### THE TRIAL COURT SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT DISMISSING THE FRAUD CLAIM BASED ON THE STATUTE OF LIMITATIONS.

 Jones asserts that the trial court should not have granted summary judgment dismissing the fraud claim based on the statute of limitations, because there were genuine issues of material fact concerning when Jones knew or should have known of any fraud perpetrated on Jones by Runft. We agree.

We note that in its motion for summary judgment, the law firm did not challenge whether Jones had sufficiently pleaded a fraud claim, but only whether the claim was barred by the statute of limitations. Therefore, we will not address whether Jones sufficiently alleged fraud, but only whether the statute of limitations barred any claim of fraud.

I.C. § 5–218(4) contains a three-year statute of limitations for fraud claims. In *McCoy v. Lyons*, 120 Idaho 765, 820 P.2d 360 (1991), the Court recently addressed this aspect of I.C. § 5–218(4) and held that the statute does not begin to run until the plaintiff knew or reasonably should have known of the facts constituting the fraud. The Court explained that "discovery," as used in the statute, means the point in time when the plaintiff had actual or constructive knowledge of the facts constituting the fraud and that application of I.C. § 5–218(4) does not depend on when the plaintiff should have been aware that something was wrong. *Id.* at 773, 820 P.2d at 368. The Court held that when the plaintiff discovered the fraud is a question of fact for the jury and that summary judgment on this issue was only appropriate if there is no factual dispute about when this discovery occurred. *Id.*

Jones alleged that the law firm committed fraud "by concealing and falsely leading Jones to believe that [the law firm] had no responsibility concerning the release of funds without securing Kundrats' and Sigismontis' executed [Pinecrest assignment] and fraudulently concealed the fact of damage for the purpose of escaping responsibility there-

from." The trial court ruled that the statute of limitations barred the fraud claim, because Jones, by his own admission, knew of any fraud no later than October 19, 1984. On appeal, Runft asserts that this is the latest date for the statute to begin to run, because this is the date that Jones acknowledged knowing that the Pinecrest assignment had not been signed at the time the escrow company released the loan money. In light of these assertions, *McCoy* makes it clear that the question before this Court is whether there is a factual dispute concerning Jones's discovery of all the facts constituting the fraud as of October 19, 1984. We conclude a factual dispute exists.

There is no clear statement in the record before us that by October 19, 1984, Jones, or his agents, knew that the Pinecrest assignment had not been signed. The portions of the depositions submitted by Runft on summary judgment indicate that Jones and his agents cannot remember, or are unsure, when they knew the Pinecrest assignment had not been signed.

Jones's deposition indicates that he was not sure about the dates and the order of the correspondences between his agents and Runft. Jones states that he became aware that the assignment was not executed, but the portion of the deposition offered in connection with the summary judgment motion does not clearly show when Jones knew this.

Addison's deposition is similarly ambiguous. Addison was asked whether until he received the October 26, 1983, letter he was assuming that the assignment had been completed. Addison's affirmative answer to this question only admits that Addison assumed all the documents were complete prior to October 26, 1983. It does not show what Addison knew or should have known as to the completion of the documents after October 26, 1983.

Hoffman, Jones's attorney, acknowledged that after a meeting with Runft in October 1984, he "was aware of an unexecuted Assignment for Purposes of Collateral." The portion of Hoffman's deposition submitted by the law firm in support of its motion for summary judgment on this issue was cut off in the middle of what seems to be an explanation concerning Hoffman's answer. In ad-

dition, on October 19, 1984, Runft wrote to Hoffman stating:

> The original of one document remains undelivered, since we had to make some corrections and obtain replacement pages for some of the exhibits: the Assignment for Purposes of Collateral of the Pine Crest properties. I spoke with Dick Sigismonti regarding the originals and they will be delivered to my attention right away. My review of the file and all documents indicates to me that the transaction has been completed and all documents are in order and have been delivered except for the Assignment for Purposes of Collateral.

This letter clouds the issue of Hoffman's knowledge of the status of the Pinecrest assignment. While it indicates the "originals" of the Pinecrest assignment remained "undelivered," the letter does not clearly show whether the "originals" were executed, or what "delivery" meant. "Delivery" was used by the parties to refer to copies of the documents being sent from the escrow company to Jones after closing of the real estate transaction, and also, for example in the loan agreement, for delivering documents directly from NIJC to Jones. While there is an inference presented by this letter that the final version of the assignment was still being worked out, this statement is insufficient to eliminate a genuine issue of material fact concerning when Jones and his agents knew or should have known Runft's alleged fraud occurred.

Jones asserts that the law firm is estopped from asserting that the statute of limitations bars the fraud claim. We do not address this issue, because it is premature. Whether the trial court needs to address estoppel depends on the resolution of the factual issue concerning when the statute of limitations began to run.

## V.

### THE LAW FIRM IS ENTITLED TO SUMMARY JUDGMENT ON THE INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM BASED ON RUNFT'S REPRESENTATION OF NIJC.

▮ The law firm asserts that it cannot be liable for intentional interference with contract, because Runft was representing NIJC when he took the actions of which Jones complains. We agree.

The trial court focused on two contracts it concluded were alleged by Jones: (1) a contract between Jones and NIJC, in which NIJC promised Jones it would secure the Pinecrest assignment from Sigismonti and Kundrat, and (2) a contract between Jones and the escrow company, in which the escrow company promised to hold the loan money until the collateral NIJC had agreed to furnish Jones, including the Pinecrest assignment, was provided. The trial court concluded that the law firm's summary judgment motion based on Runft being NIJC's attorney could apply only to the first of these two contracts, because NIJC was not a party to the second contract.

Concerning the second contract to which the trial court referred, our reading of the record reveals no evidence of an agreement between Jones and the escrow company. Although Jones may be a third-party beneficiary of the escrow instructions, this would not preclude summary judgment in NIJC's favor. The escrow instructions were directions from NIJC to the escrow company. Anything Runft did to provoke the escrow company to disburse the loan money without the Pinecrest assignment, he did as attorney for NIJC, a party to the escrow instructions. Therefore, we focus only on the potential liability of the law firm based on Runft's representation of NIJC in provoking the escrow company to disburse the loan money.

Concerning the applicability of Runft's representation of NIJC to interference with the contract between Jones and NIJC, the trial court concluded that there is an issue of fact whether Runft was acting within the scope of his authority from NIJC when he modified the escrow instructions to allow disbursement of the loan money without the Pinecrest assignment. The trial court stated that the law firm contended NIJC and Jones's agents agreed to the modification, while Jones denied there had been an agreement to modify this requirement. The trial

court's theory was that if there had been no agreement between Jones and NIJC to modify the escrow instructions to allow disbursement of the loan money without the Pinecrest assignment, Runft's representation to Rogers that the real estate transaction could close without requiring the Pinecrest assignment would not have been a truthful representation, because Jones and NIJC had not agreed to the modification. Therefore, the trial court reasoned, the dispute between the law firm and Jones whether Jones and NIJC had agreed to the modification created an issue of fact that precluded summary judgment.

We are unable to accept this logic. If Jones and NIJC had agreed to a modification of the requirement that the loan money not be disbursed until the Pinecrest assignment was "executed and/or recorded," the claim for intentional interference would fail because there would have been no breach of a contract between Jones and NIJC. On the other hand, if Jones and NIJC had not agreed to a modification, there is no evidence that Runft was not representing NIJC when he provoked the escrow company to disburse the loan money. It is undisputed that the escrow company only disbursed the loan money after receiving a letter from the secretary of NIJC stating:

> You are authorized and directed to accept this letter as fulfilling the provision to close escrow and use those funds being loaned by Aaron U. Jones to the North Idaho Jockey Club, Inc.

Although Runft drafted this letter for the secretary's signature, it was NIJC through its secretary that authorized the disbursement. This may have been a breach of contract by NIJC, but it does not provide a basis for a claim against the law firm for intentional interference with contract.

## VI.

## CONCLUSION.

We vacate the trial court's award of summary judgment to the law firm on the breach of assumed duty and breach of fiduciary duty claims. We reverse the trial court's award of summary judgment to the law firm on the

fraud claim and the denial of summary judgment to the law firm on the intentional interference with contract claim. We remand the case to the trial court for further proceedings.

We award no costs or attorney fees on appeal.

McDEVITT, C.J., BISTLINE and SILAK, JJ., and REINHARDT, J., Pro Tem, concur.