908 P.2d 143

Earl RIFE and Sylvia Rife, husband and wife, individually and in their representative capacity as the parents and natural guardians of Jacob Rife, a minor, Plaintiffs–Appellants, Cross–Respondents,

v.

Glenn Richard LONG, W.O.M., Inc., American Falls School District No. 381, and John Does I through X, Defendants–Respondents,

and

City of American Falls, Defendant,

and

STATE of Idaho acting through the Idaho Transportation Board and Idaho Transportation Department, Defendants–Respondents, Cross–Appellants.

No. 21055.

Supreme Court of Idaho,
Pocatello, May 1995 Term.

Aug. 30, 1995.

Rehearing Denied Jan. 10, 1996.

Racine, Olson, Nye, Cooper & Budge, Chtd., Pocatello, for appellants. Reed W. Larsen, argued.

Merrill & Merrill, Pocatello, for respondents Long and W.O.M. Stephen S. Dunn, argued.

Quane, Smith, Howard & Hull, Pocatello, for respondent American Falls School District No. 381. Douglas J. Balfour, argued.

Thomsen and Stephens, P.A., Idaho Falls, for respondent State of Idaho Department of Transportation. Alan C. Stephens, argued.

TROUT, Justice.

## I.

### FACTUAL SUMMARY

In 1988, Jacob Rife (Jacob), a fifth grader at American Falls Middle School, was walking home from school with his friend, Nick Wilkinson (Nick). The boys crossed the soccer field to the southwest of the school, crossed Bannock Avenue, and approached the intersection of Bannock Avenue and Harrison Street. Nick stopped at the curb, while Jacob continued on, stepped off the curb and walked into the rear wheels of a tractor-trailer driven by Glen Long (Long), resulting in serious injury to Jacob.

Highway 39, or Pocatello Avenue as it is also called, enters the east end of American Falls in a southwesterly direction. It then veers approximately thirty or forty degrees and heads towards the center of town in a northwesterly direction. At this curve where it intersects with Bannock Avenue, Highway 39 becomes Harrison Street as it continues west. The accident occurred at this intersection.

At the time of the accident Long was driving a tractor-trailer unit owned by W.O.M. Inc. Prior to entering the curve at Harrison and Bannock, Long observed several students walking toward the intersection. He testified he had driven this route many times and understood this was where many

children crossed the road. He also stated the curve was tight, and he had to "ride" the center line in order for his trailer to clear the curb. Jacob's friend Nick testified Jacob was walking in "a daze" and he walked off the curb rather than stopping to check for traffic. Long was already past the point where Jacob entered the street having already made the turn with the truck, but not the trailer. When Jacob stepped off the curb, he was run over by the rear tires of the trailer which "off-track"; that is, they do not follow directly behind and in the path of the tractor's tires when turning.

Jacob's parents (the Rifes), in their individual capacity and as guardians of Jacob, brought a negligence action against Long, his employer, the American Falls School District (the District), the City of American Falls, and the State of Idaho.

The Rifes allege the District, State of Idaho, and City of American Falls were negligent in locating, designing, constructing, repairing and maintaining the highways and roads and in planning, designing, and maintaining the transportation system. Further, they assert these defendants were negligent in failing to control the vehicle and pedestrian traffic, and failing to provide a safe means of travel to and from school. Rifes argue that these defendants negligently failed to adopt, implement, and carry out measures to educate and protect the safety and welfare of children traveling to and from school and that they negligently supervised Jacob. The City of American Falls and the Rifes settled prior to this appeal.

The district court granted summary judgment to the District, finding it had no authority over the roadways, and finding it owed no duty of care to Jacob outside of school and school hours. The court granted partial summary judgment to the State, finding design and construction immunity and that the State had no duty to supervise Jacob. The district court refused to grant summary judgment to the State as to the theory it negligently maintained and signed the intersection.

As against Long, the Rifes allege that he was negligent in the operation of a motor vehicle, and his employer W.O.M. Inc. is also responsible under the doctrine of respondeat superior. Ultimately the district court granted summary judgment for Long and W.O.M., Inc., finding Long had exercised due care and, therefore, there was no breach of any duty of care.

The Rifes appeal the grant of summary judgment to the District, Long and W.O.M., Inc. They also appeal the grant of partial summary judgment to the State. The State cross-appeals the partial denial of summary judgment. The trial court issued a Rule 54(b) certificate as to all issues and all parties.

## II.

### WHETHER THE RULE 54(b) CERTIFICATE WAS IMPROPERLY GRANTED

■ Although the issuance of the 54(b) certificate has not been challenged by any of the parties, we are nonetheless faced with the jurisdictional question of whether I.R.C.P. 54(b) has been properly invoked. *Hecla Mining Co. v. Star–Morning Mining Co.*, 122 Idaho 778, 839 P.2d 1192 (1992). The fact that the district court certifies a judgment as final and appealable under I.R.C.P. 54(b) does not restrict our right to review the matter. *Glacier Gen. Assurance Co. v. Hisaw,* 103 Idaho 605, 608, 651 P.2d 539, 542 (1982).

■ Multiple parties were involved in this action and the judgment appealed from wholly terminated at least one claim against the District and Long. Additionally, the district court determined there was no just reason for delay in entering final judgment. Therefore, we find the 54(b) certificate properly certified the judgment as final between the Rifes and these two parties. However, we will not address the arguments presented involving the State of Idaho because we find the 54(b) certificate pertaining to the State was improperly granted.

■ The district court granted partial summary judgment to the State on the theory of negligent design of the highway, and negligent supervision of Jacob. However, it refused to grant summary judgment on the

theory of negligent maintenance of the intersection. In order for a partial judgment to be certified as final and appealable under Rule 54(b), the order granting partial judgment must finally resolve one or more of the claims between the parties. *Toney v. Coeur D'Alene School Dist. No. 271,* 117 Idaho 785, 786, 792 P.2d 350, 351 (1990). If it does not, then it is error for a trial court to certify any interlocutory order as final under I.R.C.P. 54(b). *Id.*

In this case, the Rifes brought an action for negligence against the State of Idaho. Although the Rifes argued several theories in support of this cause of action, it is still a single claim of negligence against the State. *Cf. Thorn Creek Cattle Ass'n Inc. v. Bonz,* 122 Idaho 42, 830 P.2d 1180 (1992); *Toney v. Coeur D'Alene School Dist. No. 271,* 117 Idaho 785, 792 P.2d 350 (1990); *Glacier Gen. Assurance Co. v. Hisaw,* 103 Idaho 605, 651 P.2d 539 (1982). This rule may not be invoked to permit the appeal of a partial adjudication of the rights of one of the parties; it is only applicable in a multiple party situation if there is a complete disposition of a claim relating to the party seeking to invoke the rule. *See Backus Plywood Corp. v. Commercial Decal, Inc.,* 317 F.2d 339, 341 (2d Cir. 1963).

Accordingly, since there has not been a final adjudication of at least one claim involving the State of Idaho, we dismiss the appeal as to that party. Further, because the State is not a party involved in this appeal, we likewise dismiss the cross-appeal brought by the State, and remand for further proceedings in district court.

### III.

### WHETHER SUMMARY JUDGMENT WAS PROPERLY GRANTED TO THE DISTRICT

■ This Court, when reviewing the grant of summary judgment, will review all the pleadings, depositions, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. *Harris v. State, Dep't of Health,* 123

Idaho 295, 298, 847 P.2d 1156, 1159 (1992); I.R.C.P. 56(c). In doing so the Court will construe all facts liberally in favor of the party opposing the motion, and will draw all reasonable inferences from the record in favor of the non-moving party. *Id.*

### A. The District Does Not Have a Statutory Duty to Supervise Students After School Hours and Off School Property

■ The Rifes argue the District has a duty to supervise its students, and that the duty extends to supervising students walking to and from school. The Rifes cite as authority I.C. § 33–512(4), which provides that the school district board of trustees has a duty "to protect the morals and health of the pupils." They argue this is a codification of the special relationship between schools and students and thus establishes the duty owed by school officials even beyond the school grounds.

The district court found the statutory duty codified in I.C. § 33–512(4), did not extend to the circumstances of this case. We have previously held that when the legislature enacted I.C. § 33–512(4), it created a statutory duty which requires a school district to protect the health and morals of the students. *Czaplicki v. Gooding Joint School Dist.,* 116 Idaho 326, 331, 775 P.2d 640, 645 (1989); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986). Each of these cases involved allegations of negligence which occurred while the students attended school or school activities. Most recently in *Brooks v. Logan,* 127 Idaho 484, 489, 903 P.2d 73, 78 (1995), we noted that a school district may be responsible for negligence occurring during school hours which ultimately results in injury off the school grounds. In each of these instances the operative facts relating to the duty and breach of duty occurred on the school grounds.

We find no indication the statutory duty imposed by I.C. § 33–512(4) was adopted in order to extend the duty of the school districts to supervise students while traveling home. The legislature's intent to impose this statutory duty only while the students are in the District's control is evidenced by reading

the entire list of powers and duties enumerated in I.C. § 33–512. All of the provisions of this statute deal with powers and duties established for the administration of the schools. Indeed the title of the Act denotes that the statute pertains to the governance of schools. Clearly the legislature was addressing the need to properly supervise students during their required attendance at school, and mandating that the school district is responsible for any negligence occurring while the children are there. We find nothing in this legislation to indicate it was intended to extend to the students' travel to and from school. It is undisputed that Jacob had been dismissed from school and all of the elements of any alleged negligence occurred after school hours and off school grounds. Based upon the uncontroverted facts, we find the duty imposed by I.C. § 33–512(4) is not implicated in this case.

## B. The District Does Not Have a Common Law Duty Under these Circumstances

■ Next, the Rifes argue that this Court should recognize a common law duty requiring a school district to see that its students travel to and from school safely. They urge us to extend the duty of care we articulated in *Bauer v. Minidoka School Dist. No. 331*, 116 Idaho 586, 778 P.2d 336 (1989). In *Bauer*, the injured student was on the school grounds prior to the beginning of the school day and the school authorities had knowledge the students used the grounds at that time. This Court quoted from *Albers v. Independent School Dist. No. 302*, 94 Idaho 342, 487 P.2d 936 (1971), that: "Generally, schools owe a duty to supervise the activities of their students whether they be engaged in curricular activities or non-required but school sponsored extra-curricular activities." *Id.* at 590, 778 P.2d at 340. The Court then cited with approval two Washington cases which held that the duty a school district owes to its pupils is "[to] anticipate reasonably foreseeable dangers and to take precautions protecting the children in its custody from such dangers. The child may sue the school district for injuries resulting from its failure to protect the child." *Id.* at 590, 778 P.2d at 340 (quoting *Carabba v. Anacortes School*

*Dist. No. 103*, 72 Wash.2d 939, 435 P.2d 936 (1967)). The Rifes argue that this Court recognized a special relationship between student and school district in *Bauer*, and we should extend that duty to negligence occurring off the school grounds based upon *Sharp v. W.H. Moore*, 118 Idaho 297, 796 P.2d 506 (1990). The Rifes claim the risk of harm was foreseeable to the District, and therefore, under *Sharp*, the District owed a duty to see that Jacob reached home safely. While we have recognized a common law duty to protect against the reasonably foreseeable risk of harm to a student *while in the District's custody*, we have not previously extended that duty once the student is no longer in a relationship of control or supervision by the District.

We only engage in a balancing of the harm in those rare situations when we are called upon to extend a duty beyond the scope previously imposed, or when a duty has not previously been recognized. In the present case the Rifes are requesting that we extend the District's duty of care. Determining whether a duty will arise in a particular instance involves a consideration of policy and the weighing of several factors which include:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Isaacs v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 361, 695 P.2d 653, 658 (1985). With respect to the foreseeability of the harm, this Court has stated:

> [F]oreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threat-

ened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required.

*Sharp,* 118 Idaho at 300–01, 796 P.2d at 509–10 (citing, *inter alia, Isaacs, supra* ).

We find, in weighing these basic policy considerations, the burden on our school districts would be enormous. If we were to impose a duty on each school district to protect its students outside of school and school hours, they would incur substantial financial and additional manpower burdens. Conversely, the harm to the students is relatively small given that the school district releases the students back to the care of their parents at the end of the school day. We believe the common law duty arose because the parents are not in a position to protect their children while they are attending school. Thus, the school district bears that burden while the children are in its custody. However, after school has adjourned for the day, and the students have been released, the parents are free to resume control over the child's well-being. Accordingly, we decline to extend a common law duty under the circumstances of this case.

**C. The Trial Court Correctly Granted Summary Judgment for the District on the Allegations of Negligent Highway Maintenance or Design**

■ The Rifes' complaint alleges the District as well as the State of Idaho and City of American Falls have a duty regarding the highways and roads. The Rifes argue the District is required by virtue of the Manual on Uniform Traffic Control Devices to play a part in installing and monitoring traffic control devices relating to the students' route home. Similarly, the Rifes argue I.C. § 49–584 [1] (I.C. § 49–201(3)), imposes a statutory duty pertaining to traffic control on the District.

The district court held that the responsibilities for road design, maintenance, signing, and speed limits are all under the jurisdiction of the Idaho Department of Transportation and other local authorities which have been empowered by our legislature to control the roadways. The district court was correct in determining that the school districts are under no duty with regard to the public roadways. I.C. § 49–584 [I.C. § 49–201(3) ] imposed a duty upon the Board of Transportation to adopt a manual based upon a uniform system of traffic control devices. This statute clearly applied only to the Board of Transportation. I.C. § 49–586 [I.C. § 49–209] imposed a duty upon "local authorities" requiring all traffic control devices to be erected in conformance with the state manual adopted pursuant to I.C. § 49–584 [I.C. § 49–201(3) ]. Although this section of the Idaho Code did not contain a definition of "local authority" at the time of the accident, the legislature amended the Act effective in January 1989 to include such a definition. The definition of "local authority" currently found in I.C. § 49–113(9) provides an indication of the legislature's intent in the use of that term in I.C. § 49–586 [I.C. § 49–209]. "Local authority" is now defined as "every county, highway district, municipal and other local board or body having authority to enact laws, resolutions, or ordinances relating to the traffic under the constitution and laws of this state." The District unquestionably does not fall within the definition of a "local authority." *See also Bingham v. Idaho Dep't of Trans.,* 117 Idaho 147, 786 P.2d 538 (1989).

The Rifes also argue the School Crossing Protection Manual, which was generated by the Idaho Department of Transportation, imposed a duty on the District. However, the trial court correctly noted the District did not adopt this manual, and it therefore cannot be the basis for the imposition of a duty.

**D. The District Did Not Assume a Duty to Provide Crossing Guards**

■ The Rifes argue the District assumed a duty to provide crossing protection at the middle school because it had provided that

---

1. I.C. § 49–584 is the controlling statute in this case since the recodification took effect January 1, 1989, and the accident occurred in May, 1988. The Rifes have argued that the current provisions of the Idaho Code apply, however in most cases a former statute applies due to the date of the accident. Therefore, all references in this opinion to provisions in Idaho Code tit. 49 will be to the one in effect at the time of the accident, with the current provision in brackets for reference purposes.

protection to fifth graders when they attended the elementary school. They assert the District breached this assumed duty when it moved the fifth graders to the middle school and failed to provide the same protection. We note the District has designated crossing areas directly in front of the middle school and does provide crossing guard protection for students crossing in those areas. That does not mean, however, that it has assumed a duty to provide crossing protection at any intersection a student may cross. The intersection where the accident occurred was several intersections away from the school and the approved school crossings. The District only assumed a duty to provide safe crossing at the designated crossings, and thus there was no assumed duty in this case. *See Brooks v. Logan,* 127 Idaho 484, 903 P.2d 73 (1995) (citing *Jones v. Runft, Leroy, Coffin & Matthews,* 125 Idaho 607, 611, 873 P.2d 861, 865 (1994)).

### E. There is no Mandatory Statutory Duty Imposed on the District Regarding Safety Patrols

The Rifes also argue I.C. § 33–1801 imposes a duty on the school districts to provide safety patrols. However, as the District points out, this statute is permissive in that it states a school board "may" authorize safety patrols. Ordinarily in construing a statute, words will be given their common and ordinarily understood meaning. *State v. Bunting Tractor Co.,* 58 Idaho 617, 623, 77 P.2d 464, 466 (1938) (citations omitted). This Court has interpreted the meaning of the word "may" appearing in legislation, as having the meaning or expressing the right to exercise discretion. *Id.* When used in a statute, the word "may" is permissive rather than the imperative or mandatory meaning of "must" or "shall." *State v. Bunting Tractor Co.,* 58 Idaho 617, 77 P.2d 464 (1938). I.C. § 33–1801 uses the term "may" in relation to implementing school safety patrols, and therefore does not impose a mandatory duty upon the school districts.

### F. The District Did Not Owe Jacob a Duty of Care Regarding Busing Under the Circumstances of This Case

The Rifes make several arguments pertaining to the District's duty to bus Jacob to school. First, they assert I.C. § 33–1501 imposes a duty to bus Jacob to school safely. However, as the district court noted, this statute requires busing children that live more than one and one-half miles away. The record reflects Jacob did not meet this requirement. The statute also states that the school district may transport any student living closer than one and one-half miles away if the age, health or safety of the student warrants this. However, the facts support the district court's finding that the busing was provided as a courtesy only, and not for safety purposes. Since the statute is permissive in nature, it does not impose a mandatory duty upon the District to provide a safety busing program. *State v. Bunting Tractor Co.,* 58 Idaho 617, 77 P.2d 464 (1938).

Additionally, the Rifes argue that Jacob was not allowed to ride a shuttle bus and, therefore, the District was negligent in refusing to let him ride. This is not a correct statement. In their brief, the Rifes state that "implementation of the shuttle bussing then created a duty to use reasonable care to see that students could load and unload at reasonable times and places, no provision was made for Jacob." In Mrs. Rife's affidavit, she also states Jacob's only option was to walk to school. However, in a deposition taken after her affidavit, Mrs. Rife acknowledges Jacob had the option of riding a shuttle bus, and did in fact ride the bus on numerous occasions. Therefore, the argument that the District negligently refused to allow Jacob to ride to school is without merit.

Next, the Rifes argue that by providing the busing between schools, the District recognized, or assumed, a duty to see all students reached home safely. Again, the uncontroverted evidence indicates the District provided a convenience shuttle bus program. Therefore, it assumed a duty to provide shuttle busing, and to do so safely, to those who chose to ride, and not to see that their walk home was a safe one. *See Brooks,* 127 Idaho at 489, 903 P.2d at 78 (citing *Jones v. Runft, Leroy, Coffin & Matthews,* 125 Idaho 607, 611, 873 P.2d 861, 865 (1994)).

Both parties argue that *Bingham v. Idaho Dep't of Trans.*, 117 Idaho 147, 786 P.2d 538 (1989), applies to this case. In *Bingham* we found the school district may have assumed a duty because it had implemented a safety busing system. We are not faced with that situation in this case. The district court correctly found the District merely provided a courtesy shuttle bus service which was simply made available for the student's use. Further, there is no indication Jacob was hurt as a result of his participation in the busing program. Therefore, the *Bingham* case is not applicable to this action.

**G. The Rifes' Assertion that a Fence Constructed Along Highway 39 Directed the Students to Certain Crossing Points Fails to Present a Genuine Issue of Material Fact**

 The Rifes argue a fence constructed by the District "funneled" the students to the intersection where Jacob was injured, and therefore the District should have provided a crossing guard at the accident site. The trial court agreed with the Rifes to the extent it found the District may owe a duty to Jacob on school property that potentially could affect his travel between school and home. However, the district court dismissed this funneling argument, finding the fence only extended down a partial section of one side of the school property and that the fence had holes in it and sections which were not enclosed and, therefore, students could exit the school grounds at a number of places.

We agree with the trial court that the District has a duty to supervise its students while they are on school property and during school hours, and further, that it may be liable for a breach of that duty causing injury off the school property. *See Brooks v. Logan*, 127 Idaho 484, 903 P.2d 73 (1995). However, we are not faced with that situation in this case.

Here, the funneling of the students, whether done negligently or with due care, has not been tied to the accident. The facts indicate the fence is only on one side of, and does not even extend the full length of, the school grounds. Further, it is uncontroverted that

Jacob did not exit the school grounds on the side of the school property where the fence was located. Indeed, according to the Rifes' own rendition of the facts, Jacob's route home consisted of crossing the school's soccer field and exiting the school property at a point where there was no fencing because that was a more direct route home. The fence in question is located along Highway 39 and Jacob would have been taking an indirect route home if he crossed where the fence was located. Instead, he and his mother chose a route home that was in no way affected by the fencing. Nick's deposition confirms that on the day of the accident he and Jacob went home via Mrs. Rife's chosen route.

The Rifes have argued that the deposition of Donald Thornhill supports their argument that the fence funneled the students to the intersection where Jacob was injured. As a former school board member, Thornhill testified as to his recollection of the construction of the fence along Highway 39. Contrary to the Rifes' assertion, Thornhill did not testify the fence encouraged children to cross at Bannock and Harrison (the accident site). A thorough review of his deposition reveals that he recalled the fence was built to avoid having the children arbitrarily run out onto Highway 39. This observation was also made by Sheldon Kovarsky, Superintendent of American Falls Schools, who testified the fence helped keep the children on the playground from running onto Highway 39. Both depositions reflect that the funneling argument would only be relevant in this action if Jacob had exited the school property somewhere in the vicinity of the fence.

On summary judgment, the motion must be denied if the evidence taken in a light most favorable to the non-moving party presents a genuine issue of *material* fact. In the present case, while there may be a dispute as to whether the fence directs the students to exit at certain points on Highway 39, that factual dispute is not material to this case. A material issue of fact, for summary judgment purposes, is one that is relevant to an element of the claim or defense and whose existence might affect the outcome of the case. *United States v. Grayson*, 879 F.2d

620 (9th Cir.1989). We find the resolution of this factual dispute has no bearing on the outcome of this particular case, and therefore the District's motion for summary judgment was appropriately granted.

## IV.

### WHETHER SUMMARY JUDGMENT WAS PROPERLY GRANTED TO LONG

On appeal, the Rifes argue Long had various statutory duties, as well as a duty to use ordinary care, and the question of whether Long breached any of these duties is one for the jury.

### A. I.C. § 49–729 [I.C. § 49–707] is Inapplicable in this Case

■ The Rifes argue Long owed a duty to yield based upon I.C. § 49–729 [I.C. § 49–707]. This statute required a driver to yield the right of way to a pedestrian on a sidewalk. Long correctly points out there is no evidence in the record indicating Long crossed over a sidewalk. The Rifes asserted below, and again at oral argument, that the wheels of Long's trailer went up over the curb and struck Jacob on the sidewalk. They make this assertion with no supporting evidence. The uncontroverted evidence in the record indicates Jacob did not stop at the curb and instead walked into the street and under the rear wheels of the trailer. Therefore, I.C. § 49–729 [I.C. § 49–707] is not applicable in this action.

### B. Whether Long Breached a Duty of Care Imposed by I.C. § 49–724 (I.C. § 49–615) is a Question for the Jury

■ The Rifes argue I.C. § 49–724 [I.C. § 49–615] imposes a duty upon Long. This statute provided:

**Driver to exercise due care.**—Notwithstanding other provisions of this title or the provisions of any local ordinance, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or any person propelling a human-powered vehicle and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or any

obviously confused, incapacitated or intoxicated person.

The district court determined that Long did not have a duty to sound his horn because Jacob was not near the curb at the time Long passed through the intersection. Additionally, the district court found that Jacob and Nick had not reached the intersection when Long entered, and any duty to sound his horn at this point would negate the importance of sounding horns.

The Rifes argue Nick's deposition creates a genuine issue of material fact as to whether Long should have sounded his horn. In his deposition, Nick testified that he believed the sounding of the horn would have startled Jacob out of his "daze," and thus may have avoided the accident. Long argues this statement by Nick is not admissible evidence and therefore cannot be used to survive summary judgment. However, there is no indication that the district court refused to consider it and in fact there is a confusing comment by the court that Nick's deposition "removes any issue of Long's duty to use his horn, ..." Thus, without an appropriate objection and ruling, we must take the statement into consideration.

■ Long also argues the noise made by the truck as it approached the intersection met the definition of giving an audible signal, and thus there was no violation of the statute. Finally, Long argues he had no duty to give an audible signal if a pedestrian knows or should have known of the vehicle, or if the driver does not see the pedestrian enter the roadway. Long argues Jacob knew or should have known of his truck, and that he did not see Jacob because he had passed the intersection. I.C. § 49–724 [I.C. § 49–615] clearly imposes a duty on a driver to sound his horn *when necessary*. All of Long's arguments relate to whether he breached this duty of care by failing to sound the horn when necessary. Through Nick's statement the Rifes have raised the question of whether Long's failure to sound his horn resulted in Jacob's injuries. A motion for summary judgment must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable

people might reach different conclusions. *Doe v. Durtschi*, 110 Idaho 466, 470, 716 P.2d 1238, 1242 (1986). Whether Long breached this duty is determined by a jury measuring the party's conduct against that of an ordinarily prudent person acting under all the circumstances and conditions then existing. *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980). The record indicates Long knew children had just been let out of school for the day; he saw children approaching the crosswalk; and he knew he was operating a vehicle that off-tracks several feet. For all of these reasons, viewing all reasonable inferences in favor of Jacob as the non-moving party, we find there are genuine issues of material fact precluding summary judgment.

## C. Whether Long Breached a Common Law Duty of Care is a Question for the Jury

 Next the Rifes argue Long breached a common law duty. They assert a driver owes a duty to operate a vehicle using due care, and has a duty to keep a proper lookout. Again, the questions of whether Long breached this duty, and whether that breach was the cause of Jacob's injuries, are ones for the jury. Additionally, the question as to what degree Jacob's actions caused the accident is one of comparative negligence, and is therefore not a determination to be made on summary judgment. *See Robinson v. Westover*, 101 Idaho 766, 620 P.2d 1096 (1980).

## V.

### ATTORNEY FEES

The District has requested attorney fees claiming this appeal was brought and pursued frivolously, unreasonably or without foundation. Given that we have not previously addressed the question of whether a duty of care owed by a school district extends off school grounds, we cannot say this appeal was brought for improper purposes or in bad faith. Additionally, Long requests attorney fees pursuant to I.A.R. 41. Due to our resolution of the allegations made by the Rifes as they pertain to Long, this request for fees is denied.

## VI.

### CONCLUSION

We affirm the trial court's grant of summary judgment to the District. We reverse the grant of summary judgment to Long and W.O.M. finding there are genuine issues of material fact in dispute which preclude summary judgment. We dismiss the appeal and cross-appeal involving the State of Idaho finding that the 54(b) certificate was improperly granted, and remand to the district court for further proceedings. We award costs on appeal to the District, to be paid by the Rifes. We also award costs on appeal to the Rifes, to be paid by Long and W.O.M.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.