134 P.3d 655

Russell L. CARRIER and Claudia Jo Carrier, husband and wife, and natural parents, guardians and heirs of Brian Leslie Carrier, deceased, Plaintiffs–Respondents,

v.

LAKE PEND OREILLE SCHOOL DISTRICT # 84, and their Board of Trustees; West Bonner County School District # 83, and their Board of Trustees; Michael McNulty, individually, and as an employee of Lake Pend Oreille School District # 84 and/or West Bonner County School District # 83, Defendants–Appellants.

No. 31812.

Supreme Court of Idaho, Coeur d'Alene, April 2006.

April 24, 2006.

Anderson, Julian & Hull, Boise, for appellants. Brian K. Julian argued.

Beck & Poorman, LLC., Hayden Lake, for respondents. Lawrence R. Beck argued.

BURDICK, Justice.

This case asks the Court to determine, as a matter of first impression, the definition of "suicidal tendencies" found in Idaho Code § 33–512B.

## I. FACTS AND PROCEDURAL BACKGROUND

Brian Carrier (Brian) attended Sandpoint High School as a junior during the 1999–2000 school year. He was a student in Michael McNulty's (McNulty) English class. As part of an assignment on Hamlet, Brian completed a written journal entry in April, 2000. He titled his entry "My Most Difficult Decision." Brian wrote:

> I believe my most difficult decision of all time was not to kill myself. For a long time and a lot of reasons I was contemplating suicide. I thought it would just solve all my problems. And it would. But that means that I would not be around anymore and I couldn't enjoy all the things in life that everyone else seemed to. One time I actually tried to shoot myself but I started shaking so bad and I got so scared that I just couldn't do it. I'm sure that every human being on the planet at one time in their lives has thought about killing themselves. I seemed to have these thoughts a lot during my early teen years. I often listened to a song by the band Queen named Bohemian Rapsody [sic]. One particular lyric in the song stated: "Goodbye everybody. I've got to go. Gotta leave you all behind and face the truth. I sometimes wish I'd never been born at all." This particular part of the song really appealed to me. But now I've turned my life around. Those little things that used to bother me so much, now don't even bother me anymore. I believe that I used to be so depressed all the time partly because my brother and dad used to fight, scream, and hit each other all the time. Today is the day my brother is leaving, I'm very happy that he's gone but a part of me is still wanting him to stay. I'm glad that he's gone because now he can't cause anymore problems with my dad. I can now enjoy life and all its little pleasures without any guilt.

Sometime the following month, McNulty read this journal entry and returned it to Brian. He wrote on the essay: "I'm glad to see you found a new perspective on your problem—Class & life would be a different place without you. Be sure to talk to someone (me) if these ideas return!" However, at that time McNulty did not tell Brian's parents or school officials about the contents of the essay.

The Carrier family then moved to Coleville, Washington. Brian began his senior year of high school there. On November 5,

2000, Brian did not show up for his first day of work at a new job. When his mother discovered this, she contacted the police to report her son missing. She informed the police that she had found a note on his window sill stating simply, "I'm sorry," but that she had no reason to suspect that Brian was depressed or suicidal. Later, she discovered that his calendar had the word "Goodbye" written on November 5 and that the family was missing a .308 rifle. A week later, Brian's body was discovered in Boundary County, Idaho. Brian had committed suicide.

Brian's parents, Russell and Claudia Carrier (the Carriers), then filed suit against McNulty and Lake Pend Oreille School District No. 84 and West Bonner County School District No. 83 (the school district).[1] The Carriers alleged that McNulty and the school district failed to comply with their statutory duties contained in Idaho Code §§ 33–512(4) and 33–512B. McNulty and the school district (collectively the Appellants) then moved for summary judgment. The district court granted this motion in part and denied it in part. However, recognizing "the central issues presented in this case involve questions of first impression, controlling questions of law as to which there are substantial grounds for difference of opinion, and that an immediate appeal ... may materially advance the orderly resolution of this litigation" the district court granted the Appellants' motion for a Rule 12 certification for interlocutory appeal of its denial of the motion for summary judgment.

## II. ISSUES ON APPEAL

1. Whether the meaning of "suicidal tendencies" in Idaho Code § 33–512B is ambiguous.

2. Whether Brian's essay contained sufficient direct evidence of his suicidal tendencies to trigger the duty to warn under I.C. § 33–512B?

3. Whether I.C. § 6–904A(2) of the Idaho Tort Claims Act provide the school district and McNulty with immunity

for their breach of the limited duty to warn set forth in Idaho Code § 33–512B?

4. Whether there is a genuine issue of material fact as to causation?

## III. STANDARD OF REVIEW

When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. Saint Luke's Regl. Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id.*

When reviewing a motion for summary judgment against a governmental entity and its employees under the Idaho Tort Claims Act (ITCA), this Court must engage in a three step analysis. *Coonse ex rel. Coonse v. Boise Sch. Dist.*, 132 Idaho 803, 805, 979 P.2d 1161, 1163 (1999); *Harris v. State Dept. of Health & Welfare*, 123 Idaho 295, 298 n. 1, 847 P.2d 1156, 1159 n. 1 (1992); *Olguin v. City of Burley*, 119 Idaho 721, 723, 810 P.2d 255, 257 (1991); *Czaplicki v. Gooding Joint Sch. Dist.*, 116 Idaho 326, 330, 775 P.2d 640, 644 (1989). First, we must determine whether "tort recovery is allowed under the laws of Idaho." *Harris*, 123 Idaho at 298 n. 1, 847 P.2d at 1159 n. 1. This is essentially a determination of whether there is such a tort under Idaho Law. *Czaplicki*, 116 Idaho at 330, 775 P.2d at 644. Second, this Court determines if "an exception to liability under the ITCA shields the alleged misconduct from liability." *Coonse*, 132 Idaho at 803, 979 P.2d at 1163. Finally, "if no exception

---

1. At the time of Brian's attendance, Sandpoint High School was part of the Bonner County School District # 82. This school district was

then deconsolidated and subsequently split into Lake Pend Oreille School District No. 84 and West Bonner County School District No. 83.

applies, [we examine] whether the merits of the claim as presented for consideration on the motion for summary judgment entitle the moving party to dismissal." *Id.*

■ The interpretation of a statute is a question of law over which this Court exercises free review. *Martin v. State Farm Mut. Auto. Ins. Co.,* 138 Idaho 244, 246, 61 P.3d 601, 603 (2002).

## IV. ANALYSIS

### A. Duty to warn under I.C. § 33–512B

#### 1. Meaning of "suicidal tendencies"

■ The parties agree that I.C. § 33–512B creates a duty to warn. They disagree, however, on the exact contours of that duty. The Appellants argue the term "suicidal tendencies" is ambiguous, so this Court must look beyond the words of the statute to determine the exact meaning. They contended the term should be construed narrowly to comport with the legislature's intent and also because a broader interpretation, such as that given by the district court, makes the statute too difficult for teachers and administrators to apply in practice. Therefore, they continue, since the duty to warn is a narrow, limited duty, Brian's essay did not trigger the duty because it would lead a reasonable teacher to speculate as to his present intentions regarding taking his own life. The Carriers, on the other hand, contend that the statute is unambiguous. "Suicidal tendencies," they argue, must include a pattern of conduct, so the duty to warn is triggered anytime suicidal ideation is brought to a teacher's attention. Therefore, they continue, as a matter of law Brian's essay triggered McNulty's duty to warn.

Idaho Code § 33–512B provides:

Suicidal tendencies—Duty to warn

(1) Notwithstanding the provisions of section 33–512(4), Idaho Code, neither a teacher nor a school district shall have a duty to warn of the suicidal tendencies of a student absent the teacher's knowledge of direct evidence of such suicidal tendencies.

(2) "Direct evidence" means evidence which directly proves a fact without inference and which in itself, if true, conclusively establishes that fact. Direct evidence would include unequivocal and unambiguous oral or written statements by a student which would not cause a reasonable teacher to speculate regarding the existence of the fact in question; it would not include equivocal or ambiguous oral or written statements by a student which would cause a reasonable teacher to speculate regarding the existence of the fact in question.

(3) The existence of the teacher's knowledge of the direct evidence referred to in subsections (1) and (2) of this section shall be determined by the court as a matter of law.

I.C. § 33–512B. The interpretation of I.C. § 33–512B is a matter of first impression for this Court.

■ This Court must construe a statute to give effect to the intent of the legislature. *Ada County Bd. of Equalization v. Highlands, Inc.,* 141 Idaho 202, 208, 108 P.3d 349, 355 (2005). When construing a statute, this Court "will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature, based on the whole act and every word therein, lending substance and meaning to the provisions." *Ada County Assessor v. Roman Catholic Diocese of Boise,* 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). However, if the language of a statute is capable of more than one reasonable construction it is ambiguous. *Porter v. Bd. of Trustees, Preston Sch. Dist. No. 201,* 141 Idaho 11, 13, 105 P.3d 671, 673 (2004); *State v. Schwartz,* 139 Idaho 360, 362, 79 P.3d 719, 721 (2003). "When a statute is ambiguous, 'it must be construed to mean what the legislature intended it to mean. To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history.' " *Hayden Lake Fire Protection Dist. v. Alcorn,* 141 Idaho 388, 398–99, 111 P.3d 73, 83–84 (2005) (quoting *Schwartz,* 139 Idaho at 360, 79 P.3d at 721); *accord Gillihan v. Gump,* 140 Idaho 264, 266, 92 P.3d 514, 516 (2004) ("If it is necessary for this Court to interpret a statute, the Court will attempt to ascertain legislative intent, and in construing

a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute.").

Here, the term "suicidal tendencies" is capable of more than one reasonable meaning. As the Carriers point out and the district court determined tendencies can be established through past conduct and actions. However, the Appellants point out that tendency can also mean an aim or direction toward an effect or result. Importantly then, "tendency" can have broad meaning including a pattern of past conduct or occurrences or it can have a more narrow meaning including only a specific present or future aim. Both constructions are reasonable, and both definitions can be found in a dictionary. *See Webster's Third New International Dictionary* 2354 (Philip Babcock Grove ed., 3d ed., 1966); *Webster's Collegiate Dictionary* 1214 (Frederick C. Mish, ed., 10th ed., 1993).

Therefore, this Court must turn to the relevant rules of statutory construction to ascertain the intent of the legislature when enacting I.C. § 33–512B. *See Hayden Lake Fire Protection Dist.*, 141 Idaho at 398–99, 111 P.3d at 83–84. We will turn first to the legislative history of I.C. § 33–512B and then examine the policy considerations.

The Legislature enacted I.C. § 33–512B in response to a portion of this Court's decision in *Brooks v. Logan*, 127 Idaho 484, 903 P.2d 73 (1995) (hereinafter *Brooks I* ), "which held that a teacher and school district owe a duty to warn or otherwise take action when confronted with ambiguous, circumstantial evidence of a student's suicidal tendencies." Statement of Purpose, RS 05763. In *Brooks I*, this Court found that I.C. § 33–512(4) created a duty in school districts "to act affirmatively to prevent foreseeable harm to its students." 127 Idaho at 490, 903 P.2d at 79. This duty extends to the prevention of suicide. *Id.* There, the student wrote in a daily journal as part of an English assignment, and these entries alluded to death and depression, although not specifically to suicide. *Id.* at 486, 903 P.2d at 75. This Court, after finding a duty to warn under I.C. § 33–512(4), found that there were genuine issues of material fact as to whether this duty had been breached and whether that breach

caused the suicide. *Id.* at 491–92, 903 P.2d at 80–81. However, when faced with this decision, the Legislature adopted I.C. § 33–512B specifically to narrow the duty of a teacher to warn of suicidal tendencies.

For instance, the representative who introduced the bill that added I.C. § 33–512B testified that it would narrow the duty of a teacher to warn of suicidal tendencies. Other witnesses testified that the bill helped define the limits of when a teacher had a duty to warn. However, the Plaintiff-father in *Brooks I* testified that the bill would amend the Idaho Code so as to do away with the duty to warn of potential suicide in students. Additionally, evidence was introduced showing that Idaho consistently ranks in the top five states in per capita suicides. Evidence was also introduced on methods for suicide prevention. The Legislature was well aware of the damages caused by suicides and the risks suicide presents to students and their families and friends. However, it still chose to balance these risks against the liability under the *Brooks I* decision by adopting a statute with the express purpose of narrowing the duty to warn announced by this Court in *Brooks I*.

Turning to policy considerations it becomes clear that using a broad definition of "suicidal tendencies" would create an unworkable and undesired result for educators. Currently, teachers in Idaho are not given specialized training to identify or prevent suicide. However, it is still important for our educators, who have contact with Idaho's children everyday to be alert to the signs of suicidal ideation. Only by giving the term "suicidal tendencies" a narrow definition can teachers clearly understand when they have a duty to warn and practically implement the statute. Without this clear-cut definition, any time a student mentions death or suicide a teacher would be required to warn parents and/or other authorities. Such a duty would be practically unworkable—consuming teachers' short and valuable time. As the Idaho School Boards Association points out, if the statute is interpreted broadly, it "would necessitate that school district personnel spend countless hours scrutinizing their student's [sic] work for any reference of any past

thought or reference regarding suicide, no matter how obscure or remote in time the thought may have occurred, in order to fulfill the heightened duty to warn others."

As a final matter, the Carriers argue that adopting a narrow definition of "suicidal tendencies" would render I.C. § 33–512B a nullity because liability would rarely be imposed, and this the Court cannot do. However, simply because the duty to warn would arise less frequently does not make the statute a nullity; it simply means that the statute creates a narrow, limited duty. Therefore, based upon the Legislative history and public policy this Court finds the Legislature intended the term "suicidal tendencies" in I.C. § 33–512B to mean a present aim, direction or trend toward taking one's own life.

### 2. Brian's Essay

██ Clearly, Brian's essay provided evidence that he had contemplated suicide in the past. However, having determined the meaning of "suicidal tendencies" in I.C. § 33–512B, the Court must now examine whether Brian's essay provided evidence of a present aim, direction or trend toward taking his own life.

Brian's discussions of his contemplating suicide are all in past tense. For instance, Brian wrote "[f]or a long time and a lot of reasons I was contemplating suicide" and that he had suicidal thoughts "a lot during my early teen years." Conversely, when he discusses the present and future, he explains that the reasons for his depression and suicidal ideation are gone and that he "can now enjoy life and all its little pleasures without any guilt." Brian also wrote that he had turned his life around and that he was currently happy. None of this indicates a present or future intention to commit suicide. In fact, with these words the opposite conclusion is the only conclusion to be inferred.

The only evidence of suicidal thoughts that a reasonable teacher could read in that essay is that those thoughts had all been in the past, but were resolved. Any evidence that they might return or that Brian was contemplating suicide when he wrote this essay would be speculative. Additionally, none of the expert affidavits filed by the Carriers showed these thoughts written by Brian could be connected to any present suicidal ideation. McNulty could not have determined that Brian was currently or in the future contemplating suicide without speculating about his intentions; Brian's clearly stated thoughts and feelings indicate that he was happy at that time and was no longer contemplating suicide. There simply is insufficient evidence that Brian had a current aim or desire to commit suicide at the time he wrote the essay to trigger a duty to warn. As a result, the Court need not address any further issues presented by the parties.

### V. CONCLUSION

The term "suicidal tendencies" in I.C. § 33–512B is narrowly defined to mean a present aim, direction, or trend toward taking one's own life. Under this definition, Brian's essay did not create in the Appellants a duty to warn. We reverse and remand. Costs to Appellants.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES, concur.