# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36434

ANNA STODDART, individually and as
personal representative of the ESTATE OF
CASSIE JO STODDART; ANDREW
STODDART; VICTOR PRICE; FRANK
CONTRERAS and ALLISON SERR-
CONTRERAS, husband and wife;  DYLAN
CONTRERAS; SHELBY MC CLUSKEY
and CHEYENNE MC CLUSKEY,

    Plaintiffs-Appellants,

v.

POCATELLO SCHOOL DISTRICT #25;
POCATELLO HIGH SCHOOL; DOES 1-
XX,

    Defendants-Respondents.

and

KERRY DRAPER and PAMELA DRAPER,
husband and wife,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2010 Term

2010 Opinion No.  99

Filed:  September 20, 2010

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Sixth Judicial District of the State of Idaho,
Bannock County.  Hon. David C. Nye, District Judge.

The decision of the district court is <u>affirmed</u>.

Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, for appellants.
Richard A. Hearn argued.

Anderson, Julian & Hull, LLP, Boise, for respondents.  Brian K. Julian argued.

---

HORTON, Justice

This case arises from the shocking murder of Cassie Jo Stoddart (Cassie Jo) by Brian
Draper (Draper) and Torey Adamcik (Adamcik) in September 2006.  The Stoddart family (the

Stoddarts), together with the Contreras Family (the Contrerases) (in whose house Cassie Jo was murdered), (collectively "the Plaintiffs") brought this suit, advancing claims against the Pocatello School District (the School District) for wrongful death, negligent and/or intentional infliction of emotional distress and for property loss and loss of property value. These claims are predicated upon the School District's alleged failure to take necessary action to protect Cassie Jo despite warnings that Draper and Adamcik planned a "Columbine-like" shooting.

The district court granted the School District's motion for summary judgment and entered judgment dismissing the action against the School District. The Plaintiffs have timely appealed from that judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2004, approximately two and a half years prior to Cassie Jo's murder, a student reported that Draper and another student, C.N., were planning a school shooting. The report was based upon statements made by C.N. in the course of repeated telephone conversations occurring on February 14, 2007, with two girls, G.D. and M.B. G.D. recorded a portion of one conversation in which C.N. stated, "going to have a school shooting on Tuesday, 17th, 2004." After G.D. brought the threat to the attention of officials at Irving Middle School, the principal and the School Resource Officer (SRO) called C.N. into the principal's office where he was confronted with the recording. C.N. denied any intention to bring a weapon to school or to participate in a school shooting. The SRO then went to Draper's home and interviewed Draper and his mother. Draper's mother checked her caller ID and found that three telephone calls had been placed from that phone to G.D. Draper stated that C.N. had made the recorded statement after G.D. "begged" him to repeat the statement about a school shooting. The following day, the principal and the SRO brought G.D., M.B., C.N. and Draper into the principal's office for a one-hour discussion of the matter. C.N. and Draper were warned and agreed not to make any such statements again, even in a joking manner.

Approximately one month later, another group of students reported that C.N. and Draper were planning a school shooting, this time to occur at a school dance. They reported that C.N. had stated that he, Draper, and another boy had made this plan at a previous dance and had walked through the dance pretending to shoot people. The principal and SRO interviewed C.N. C.N. initially denied any knowledge of the matter. As the interview continued, C.N. claimed that Draper and the other boy wanted to commit a school shooting at the next dance and that Draper

2

and the other boy had walked through an earlier dance acting out a shooting, pretending to use firearms and identifying locations that could be used. C.N. stated that Draper was obsessed with Columbine and that Draper had "pictures of people with knives and guns and different killers hanging on the walls of his bedroom, as well as letters about the Columbine shooting incident." The SRO interviewed Draper about the matter, in the presence of the principal and Draper's mother. Draper claimed that he and the other boys had walked through the dance using imaginary paintball guns. Draper's mother denied that Draper had any posters on his wall depicting weapons or "evil looking pictures."

C.N. was referred for psychological counseling and transferred to an alternative school. The principal has since stated that, based on the disposition of the investigations, "we must have felt that [Draper] was not a threat." Draper's school disciplinary records did not mention either of the reports or the subsequent investigation.

In September 2006, another student, S.C., who was assigned to share a locker with Draper, found several notes between Draper and Adamcik. She viewed these notes as threatening and remembers the word "death" in them, but can remember little more about them. S.C. showed one of the notes to her mother that asked "when are we going to do this?" Her mother recalls seeing the note, although she does not recall its content. Because S.C. was upset, her mother encouraged her to bring the notes to the attention of school officials. S.C. brought the notes to the attention of the SRO and vice-principal who "dismissed [her] concerns."[1]

On September 22, 2006, the same day Cassie Jo was murdered, Draper and Adamcik made a video recording of themselves talking about their plans to kill Cassie Jo and to carry out a Columbine-style shooting. That night, Draper and Adamcik entered the Contrerases' house and stabbed Cassie Jo to death. Draper and Adamcik were arrested, tried, and found guilty of Cassie Jo's murder.

---

[1] This description of S.C.'s notification of the SRO and the vice-principal reflects application of the standard governing motions for summary judgment. The School District has submitted evidence casting doubt upon the accuracy of S.C.'s account. The School District asserts that S.C. and Draper would not have been assigned to share a locker, because S.C. was a sophomore and Draper was a junior and locker assignments are made by homeroom teachers and S.C. and Draper did not share a homeroom. Draper's locker was searched following the murder and no property belonging to S.C. was found. S.C. identified the SRO to whom she delivered the note as "Baca." Noah Baca, the SRO at the high school, states that he did not serve as the SRO from June to November, 2006, as he was recovering from back surgery. The vice-principal, Robert Parker, who had children attending the high school at the time, states that he did not receive any information from S.C. and that if he had "any inkling" that Draper or Adamcik might commit a dangerous act, he would have taken action.

3

On January 31, 2008, the Stoddarts and the Contererases filed a complaint alleging that Draper and his parents, Adamcik and his parents, and the School District were liable to them for Cassie Jo's wrongful death, infliction of emotional distress, and property damage and loss of property value.

The School District moved for summary judgment, arguing that the School District did not owe Cassie Jo a duty of care under the circumstances, that the School District was immune from liability under I.C. § 6-904A, and that the School District was not jointly and severally liable for the acts of Draper and Adamcik.

Following a hearing, the district court issued a memorandum decision granting the School District's motion. The court found that because the murder occurred off school grounds and after school hours, the School District owed no duty to Cassie Jo at the time of her murder. The court further found that, even if the School District had a duty to supervise Cassie Jo or her killers, the immunity afforded the School District by I.C. § 6-904A would bar recovery. Finally, the court ruled that the School District would not be jointly and severally liable with the co-defendants for the damages suffered by the Plaintiffs. The district court thereafter entered a judgment consistent with its memorandum decision. The Plaintiffs now appeal the decision of the district court regarding duty and immunity; they do not challenge the district court's determination regarding joint and several liability.

## II. STANDARD OF REVIEW

When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. Saint Luke's Regl. Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). "The burden is on the moving party to prove an absence of genuine issues of material fact." *Rees v. State, Dep't of Health and Welfare*, 143 Idaho 10, 14, 137 P.3d 397, 401 (2006). This Court views the facts and inferences in the record in favor of the non-moving party. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997). Whether a duty of care exists is a question of law over which this Court exercises free review. *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999).

4

## III. ANALYSIS

In analyzing a tort claim against a school district or other governmental entity under the Idaho Tort Claims Act (ITCA), this Court has spelled out the following analytical process:

> A plaintiff seeking to recover on a tort claim against a governmental entity must survive three stages of analysis. *Rees v. State, Dept. of Health & Welfare*, 143 Idaho 10, 14-15, 137 P.3d 397, 401-02 (2006); [*Carrier v. Lake Pend Oreille School Dist.*, 142 Idaho 804, 806-07, 134 P.3d 655, 657-58 (2006)]; *see also Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 330, 775 P.2d 640, 644 (1989). First, the plaintiff must state a cause of action for which tort recovery would be allowed under the laws of Idaho, that is, "whether there is such a tort under Idaho law." *Carrier*, *supra*. Second, the plaintiff must show that "[no] exception to liability under the ITCA shields the alleged misconduct from liability." *Id.* (quoting *Coonse v. Boise Sch. Dist.*, 132 Idaho 803, 805, 979 P.2d 1161, 1163 (1999)). Third, if no exception applies, the plaintiff still must meet its burden of showing that it is entitled to recovery based on the merits of its claim. On a motion for summary judgment, therefore, a court must first determine whether the plaintiff has stated a valid tort under Idaho law and whether the ITCA provides immunity, after which it proceeds to consider "whether the merits of the claim as presented for consideration on the motion for summary judgment entitle the moving party to [judgment]." *Id.* (quoting *Coonse*, *supra*).

*Sherer v. Pocatello Sch. Dist. No. 25*, 143 Idaho 486, 490, 148 P.3d 1232, 1236 (2006). Because we conclude that the district court properly found that the School District owed no duty of care under the circumstances, we do not reach the question of immunity.

### A. The Plaintiffs have failed to demonstrate a duty owed to Cassie Jo.

The Plaintiffs bring this suit under the Idaho Tort Claims Act. I.C. § 6-901 *et seq*. "The Act abrogates sovereign immunity and renders a governmental entity liable for damages arising out of its negligent acts or omissions." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 557, 212 P.3d 982, 987 (2009). "The purpose of the ITCA is to provide 'much needed relief to those suffering injury from the negligence of government employees.'" *Rees*, 143 Idaho at 19, 137 P.3d at 406 (quoting *Sterling v. Bloom*, 111 Idaho 211, 214, 723 P.2d 755, 758 (1986)). The Plaintiffs, then, must assert a tort under the common law or created by a separate statute in order to be eligible for relief. I.C. § 6-903(f) ("Nothing in this act shall enlarge or otherwise adversely affect the liability of an employee or a governmental entity.").

A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Nation v. State, Dep't of Corr.*, 144 Idaho 177, 189, 158

5

P.3d 953, 965 (2007) (quoting *O'Guin v. Bingham County*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005)). As the district court's summary judgment was based on the absence of a duty recognized by law, we too look only to the question of duty rather than going on to other questions such as legal causation. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 273, 869 P.2d 1365, 1368 (1994) ("The non-moving party is not required to present evidence on every element of his or her case at that time, but must establish a genuine issue of material fact regarding the element or elements challenged by the moving party's motion.").

The Plaintiffs argue that the district court erred because there were two sources from which the School District owed a duty to Cassie Jo. First, relying on the School District's common law duties and I.C. § 33-512(4), which expressly identifies a school district's duty to protect the health and morals of its students,[2] they argue that the district court erred because the School District had a duty to safeguard its students from foreseeable harms because the danger to Cassie Jo arose on school grounds and during school hours. Second, the Plaintiffs argue that by conducting an investigation of Draper two and a half years prior to Cassie Jo's murder, the School District assumed a duty to investigate competently. They contend that a competent investigation would have allowed the School District to take appropriate action to protect Cassie Jo from the danger presented by Draper and Adamcik, and by failing to conduct a competent investigation, the School District breached its duty to Cassie Jo.

*i. A duty may exist where foreseeable harm arises on school grounds during school hours, even where the actual injury occurs off school grounds and after school hours.*

The district court found that neither I.C. § 33-512(4) nor the underlying common law special relationship between a school district and its students created a duty to care for students at the time of Cassie Jo's murder, which occurred at night, off school grounds. The court, relying on *Rife v. Long*, 127 Idaho 841, 908 P.2d 143 (1995), stated that this Court "decided that when a student is not under the care, custody and supervision of a school, it is the parent's responsibility to take steps to protect the child from foreseeable risks of harm . . . ." We do not decide the case on those grounds. Other decisions from this Court, notably *Brooks v. Logan (Brooks I)*, 127 Idaho 484, 903 P.2d 73 (1995), and *Hei v. Holzer*, 139 Idaho 81, 73 P.3d 94 (2003), have recognized that a school district may owe a duty to its students, despite the fact that injury occurred off of school grounds and outside of school hours.

---

[2] Idaho Code § 33-512 states that "[t]he board of trustees of each school district shall have the following powers and duties: . . . . (4) To protect the morals and health of the pupils . . . ."

*Brooks I* involved a student who committed suicide off school grounds but had written about his suicidal tendencies in a journal as part of his English class assignments. *Brooks I*, 127 Idaho at 486, 903 P.2d at 75. This Court, basing its decision to remand on I.C. § 33-512(4), stated that "we must assume that the negligence occurred, if at all, while Jeff was attending school and [his teacher] failed to seek help. The result of the alleged negligence is the only element that did not take place on the school grounds." *Id.* at 490, 903 P.2d at 79. Describing the scope of the duty, the Court stated that I.C. § 33-512(4) "exemplifies the role of the state to the children in school, which is a role described as one *in loco parentis*." *Id.* (quoting *Bauer v. Minidoka Sch. Dist. No. 331*, 116 Idaho 586, 588, 778 P.2d 336, 338 (1989)). While this Court later found that the school district in *Brooks* was immune from suit under I.C. § 6-904A, the underlying question of whether the school district owed the student a duty was settled by *Brooks I. Brooks v. Logan (Brooks II)*, 130 Idaho 574, 944 P.2d 709 (1997).

The School District argues that the holding of *Brooks I* was subsequently abrogated by statute with the enactment of I.C. § 33-512B. The statute provides that "[n]otwithstanding the provisions of section 33-512(4), Idaho Code, neither a teacher nor a school district shall have a duty to warn of the suicidal tendencies of a student absent the teacher's knowledge of direct evidence of such suicidal tendencies." I.C. § 33-512B(1). *See also Carrier v. Lake Pend Oreille School Dist.*, 142 Idaho 804, 808, 134 P.3d 655, 659 (2006) (acknowledging that I.C. § 33-512B served to overrule *Brooks I*).[3] Certainly, the passage of I.C. § 33-512B modified the *Brooks* holding regarding suicidal tendencies. However, we do not interpret the statute as abrogating all duties embodied in I.C. § 33-512(4) or limiting liability to injuries that occur on school grounds and during school hours. "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process . . . ." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

The *Hei* case involved a sexual relationship between a student over the age of majority and a teacher. *Hei*, 139 Idaho at 84, 73 P.3d at 97. The Court distinguished between the claims against the school district alleging that there was negligent supervision of Hei (the student) and those claims alleging negligent supervision of Holzer (the teacher). *Id.* at 87-88, 73 P.3d at 100-

---

[3] The School District argues that *Carrier* holds that the extent of the duty created by I.C. § 33-512(4) is limited to suicide. While *Carrier* does state that a school district's duty extends to the prevention of suicide, the decision does not state that a school district's duties under I.C. § 33-512(4) are exclusively limited to the context of suicide. *Carrier*, 142 Idaho at 808, 134 P.3d at 659.

01. The Court found that a duty existed toward the student. *Id.* at 85, 73 P.3d at 98 (citing *Brooks I*, 127 Idaho at 490, 903 P.2d at 79). However, the Court also found that only the claim based on the school district's supervision of the teacher could proceed because of the immunity conferred by I.C. § 6-904A. *Id.* at 87-88, 73 P.3d at 100-01.

*Rife* is not inconsistent with the proposition that the relevant inquiry is to the location of the negligence rather than the location of the injury. The *Rife* Court noted that in enacting I.C. § 33-512, "the legislature was addressing the need to properly supervise students during their required attendance at school, and mandating that the school district is responsible for any negligence occurring while the children are there." *Rife*, 127 Idaho at 846, 908 P.2d at 148. In *Rife*, where the relevant supervision would have occurred off school grounds and outside of school hours, the school district was under no duty to provide that supervision. Here, the Stoddarts argue that proper investigation during school hours would have prevented Cassie Jo's death, even though she was murdered off school grounds and after school hours. Based on the language of *Rife*, *Brooks I*, and *Hei*, we cannot say that the location of the injury is dispositive in determining whether the school district owed Cassie Jo a duty.

*ii. The School District did not have a duty of care to prevent Cassie Jo's murder.*

This Court has previously recognized a duty by school districts to take reasonable steps to guard against foreseeable harms faced by their students. *Brooks I*, 127 Idaho at 490, 903 P.2d at 79 (Idaho Code § 33-512(4) creates "a statutory duty which requires a school district to act reasonably in the face of foreseeable risks of harm"); *see also Sherer*, 143 Idaho at 491, 148 P.3d at 1237 ("[S]chools are obligated to exercise due care and take reasonable precautions to protect their students . . . ."); *Doe v. Durtschi*, 110 Idaho 466, 472, 716 P.2d 1238, 1244 (1986) ("[T]he school district had a statutory duty to make reasonable efforts to protect its students from . . . danger. A breach of that duty constitutes negligence."). This case requires this Court to determine whether the scope of this general duty should be extended to require that a school district take reasonable steps to prevent a violent criminal act against a student by a fellow student away from school grounds and not in connection with a school-sponsored activity.

In *Rife*, this Court considered the question whether to extend the duty of care against the risk of reasonably foreseeable harm to a student while a student is in the custody of a school district to include a duty to see that students travel safely to and from school. 127 Idaho at 846, 908 P.2d at 148. In declining to impose such a duty, this Court stated:

8

Determining whether a duty will arise in a particular instance involves a consideration of policy and the weighing of several factors which include:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 211 Cal.Rptr. 356, 361, 695 P.2d 653, 658 (1985). With respect to the foreseeability of the harm, this Court has stated:

> [F]oreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required.

*Sharp [v. W.H. Moore, Inc.],* 118 Idaho [297,] 300-01, 796 P.2d [506,] 509-10 [(1990)] (citing, *inter alia, Isaacs, supra ).*

127 Idaho at 846-47, 908 P.2d at 148-49.

In light of the lack of foreseeability of this crime and the enormous burden that would be imposed upon school districts if we were to find that a duty exists in this case, we conclude that no duty attached to the School District under these circumstances. Although we reach this conclusion, we do not suggest that the injury sustained in this case was "minor." We are fully conscious of the enormous loss suffered by the Stoddart family as a result of the brutal murder of Cassie Jo. Rather, despite the enormity of the harm involved in this case, our decision turns on the related considerations of foreseeability and the burdens a contrary decision would impose on school districts.

Normally, the foreseeability of a risk of harm, and thus whether a duty consequently attaches, is a question of fact reserved for the jury. *Hayes v. Union Pac. R. Co.,*143 Idaho 204, 209, 141 P.3d 1073, 1078 (2006); *Orthman v. Idaho Power Co.,* 130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997); *Sharp*, 118 Idaho at 300, 796 P.2d at 509. Foreseeability is most commonly

9

addressed when considering the question of proximate causation. *See e.g. Doe v. Sisters of the Holy Cross,* 126 Idaho 1036, 1041, 895 P.2d 1229, 1234 (Ct. App. 1995) ("[T]he legal responsibility element of proximate causation is satisfied if at the time of the defendant's negligent act the plaintiff's injury was reasonably foreseeable as a natural or probable consequence of the defendant's conduct."). However, in view of the district court's holding that the School District did not owe a duty of care to Cassie Jo under the circumstances of this case, and our acknowledgment that a school district generally owes a duty of care to protect its students from foreseeable risks of harm, we must determine whether the general duty attached, that is, whether injury sustained in this case was reasonably foreseeable.

"[W]hen the undisputed facts can lead to one reasonable conclusion, this court may rule upon the issue of foreseeability as a matter of law." *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.,* 97 Idaho 408, 412-13, 546 P.2d 54, 58-59 (1975) (citing *Munson v. State, Dept. of Highways,* 96 Idaho 529, 531 P.2d 1174 (1975)). We conclude that there is no genuine issue of material fact and that the danger to Cassie Jo was not foreseeable. There is nothing in the record that suggests that the School District received information during the 2004 investigation of Draper's and C.N.'s threat of a Columbine-style shooting that would provide notice that two and a half years later one of the two students involved would commit a murder that was not, in fact, a school shooting, but rather a prelude to a planned Columbine-style attack.

We do not suggest that school districts have no duty to take appropriate action, whether by school officials or by contacting law enforcement, when school officials become aware of specific information that a student or students may be the target of a violent crime, even if that crime does not occur on school grounds. However, whatever duty the School District owed to its students in 2004 did not include the duty of indefinitely monitoring Draper, which is effectively what the Plaintiffs are now arguing. In weighing the factors identified in *Rife*, we simply cannot impose such an enormous burden on school districts.

Nor did any duty arise, as the Plaintiffs argue, upon receiving the report and note from S.C. in 2006. Viewing the evidence most favorably to the Plaintiffs, S.C. relayed her concern that Adamcik and Draper had been exchanging notes that she viewed as threatening and provided a note that asked "when are we going to do this?" The notes did not identify Cassie Jo as the potential victim of a crime. Despite the terrible tragedy that occurred in this case, we are unable to conclude that Cassie Jo's murder was foreseeable, absent the benefit of hindsight. For these

10

reasons, we affirm the district court's conclusion that the School District did not have a duty to take steps to prevent Cassie Jo's murder.[4]

*iii.    The School District did not assume a duty towards Cassie Jo in its 2004 investigation.*

Plaintiffs also argue that the School District assumed a duty to competently investigate Draper in 2004. "If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994) (citing *Bowling v. Jack B. Parson Cos.*, 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990)). The Plaintiffs argue that the School District assumed a duty by conducting the investigation of Draper two and a half years before Cassie Jo's murder. "When a party assumes a duty by voluntarily performing an act that the party had no duty to perform, the duty that arises is limited to the duty actually assumed." *Martin v. Twin Falls School Dist. No. 411*, 138 Idaho 146, 150, 59 P.3d 317, 321 (2002).

The Plaintiffs' claim is without merit. "[P]ast voluntary acts do not entitle the benefited party to expect assistance on future occasions, at least in the absence of an express promise that future assistance will be forthcoming." *Udy v. Custer County*, 136 Idaho 386, 389, 34 P.3d 1069, 1072 (2001). The investigation of the 2004 threats was not part of the "assistance" that would have been necessary to prevent Cassie Jo's murder. To the extent that there was an assumption of a duty by way of the investigation in 2004, that investigation concerned the threat by Draper to commit a school shooting then, with C.N. The School District did not assume an ongoing duty to monitor Draper's potential involvement in a future school shooting, much less a crime that might be committed away from school grounds. We therefore find that the School District did not assume any duty connected to the injury suffered by the Plaintiffs.

**B. We do not reach the question of whether the district court erred in finding the School District immune from prosecution.**

Because we find that the Plaintiffs have not demonstrated that the School District owed a duty to take steps to prevent Cassie Jo's murder, we affirm the grant of summary judgment on that ground and we do not reach the question of whether the School District has immunity under I.C. § 6-904A.

---

[4]  A fortiori, we find that the district court properly determined that the School District owed no duties to the Contrerases. There is nothing in the record that suggests that the School District had any special relationship with the Contrerases that would have created a duty to take reasonable steps to avoid their emotional distress, property damage, or loss of property value.

11

**C.  We deny the parties' requests for attorney fees under I.C. § 12-121.**

Both the School District and the Plaintiffs request attorney fees under I.C. § 12-121. "An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 234, 220 P.3d 580, 590 (2009). The Plaintiffs have not prevailed in this appeal and therefore are not entitled to an award of attorney fees. We are unable to find that the Plaintiffs have pursued this appeal frivolously. We therefore deny all parties' requests for attorney fees.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment dismissing the Plaintiffs' complaint against the School District. We deny the parties' requests for attorney fees. Costs to the School District.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.