**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50741**

| | |
|---|---|
| BRIGHTON DEVELOPMENT, INC., an Idaho Corporation,<br><br>　　Plaintiff-Counterdefendant-Appellant,<br><br>v.<br><br>QUENZER FARMS, LLLP, an Idaho limited liability limited partnership; DEAN L. QUENZER, an individual in his capacity as trustee of THE DEAN L. AND DEBORAH S. QUENZER LIVING TRUST; and DEBORAH S. QUENZER, in her capacity as trustee of THE DEAN L. AND DEBORAH S. QUENZER LIVING TRUST,<br><br>　　Defendants-Counterclaimants-Respondents. | Filed: October 28, 2024<br><br>Melanie Gagnepain, Clerk<br><br>THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. James S. Cawthon, District Judge.

Judgment dismissing complaint for breach of contract, <u>affirmed</u>.

Givens Pursley LLP; Bradley J. Dixon, Boise, for appellant. Bradley J. Dixon argued.

Powers Farley, PC; John M. Howell, Boise, for respondent. John M. Howell argued.

_____

LORELLO, Judge

　　Brighton Development, Inc., appeals from the district court's judgment granting summary judgment in favor of Quenzer Farms, LLLP, and Dean L. Quenzer and Deborah S. Quenzer, in their individual capacities and as trustees of The Dean L. and Deborah S. Quenzer Living Trust

(collectively Quenzer Farms) and dismissing Brighton's claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, Brighton and Quenzer Farms entered into a purchase and sale agreement (PSA) in which Brighton agreed to purchase real property owned by Quenzer Farms with options to purchase additional parcels. At the time the parties executed the PSA, Quenzer Farms owned approximately 277 acres of land. Brighton agreed to purchase a thirty-two-acre parcel from Quenzer Farms known as Parcel 1, and Brighton had the exclusive option to purchase the remaining 245 acres from Quenzer Farms in up to eight separate transactions. The PSA required the sale of Parcel 1 to close no later than July 31, 2020, unless otherwise agreed in writing.

In February 2020, the parties amended the PSA to address development issues with the property and to grant Quenzer Farms an easement. On July 28, 2020, the parties amended the PSA a second time to reduce the size of Parcel 1. As contemplated by the PSA, the purchase of Parcel 1 closed on July 31, 2020, at which time Quenzer Farms recorded a special warranty deed transferring Parcel 1 to Brighton.

On March 1, 2021, the parties amended the PSA a third time to modify the timing for exercising options. The amendment provided, in part: (1) "the parties agree that the first Option Closing shall be no later than the one year anniversary of the Purchase, or August 3, 2021"; and (2) "each Option exercised thereafter shall be closed no later than one year from the previously closed Option." On March 4, 2021, Brighton notified Quenzer Farms of its intent to exercise its option to purchase an additional 41.925 acres (Parcel 2). The parties closed on Parcel 2 on April 15, 2021.

Over a year later, on April 19, 2022, Quenzer Farms sent a letter to Brighton stating that the option contract was "of no force or effect" due to Brighton's failure to timely exercise its remaining options. According to Quenzer Farms, the language of the option contract's Third Amendment required Brighton to close on its future options "no later than one year from the previously closed Option, which was April 15, 2021," the date the parties closed on Parcel 2. As such, Quenzer Farms refused to proceed with any future sales of its "property at the prices set forth in the" option contract and requested Brighton execute a quitclaim deed to remove any lien that

2

may have been recorded. The next day, Brighton replied to Quenzer Farms' correspondence, arguing that there was "some confusion about the language of the third amendment" and asserting the option contract remained in effect.

A month later, Brighton sent Quenzer Farms a letter attempting to exercise its option to purchase additional property (Parcel 3). Quenzer Farms rejected Brighton's offer as untimely and notified Brighton that any additional funds or effort spent securing entitlements to portions of the land subject to the option contract would be at Brighton's sole risk. Brighton subsequently filed a *lis pendens* on the entire property subject to the option contract in the PSA. Additionally, Brighton filed suit against Quenzer Farms and moved the district court for a declaratory judgment that Brighton's offer to exercise its option to purchase Parcel 3 was timely. Brighton also alleged claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment.

In response, Quenzer Farms moved for summary judgment on several claims. First, Quenzer Farms argued that, as a matter of law, Brighton failed to exercise its option to purchase additional property by April 15, 2021. Accordingly, Quenzer Farms contended Brighton was not entitled to exercise additional options pursuant to the PSA. Quenzer Farms also moved the district court to dismiss Brighton's request for declaratory judgment and its claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing. In addition, Quenzer Farms asked the district court to declare as void the *lis pendens* filed on the remaining property. Brighton opposed the motion for summary judgment, contending the same language relied upon by Quenzer Farms proved that it had until August 3, 2022, to exercise its option to purchase additional property. Brighton further asserted that, should the district court reject its interpretation of the PSA, the terms of the PSA, and the Third Amendment in particular, should be deemed ambiguous and, as such, the district court should deny Quenzer Farms' motion for summary judgment.

Ultimately, the district court found Quenzer Farms "was well within their rights to terminate the option contract" and that the options to purchase included in the PSA were "no longer of any force or effect." Accordingly, the district court granted Quenzer Farms' motion for summary judgment and declaratory judgment. The district court also dismissed Brighton's request for a declaratory judgment as well as its claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing. Finally, the district court voided the *lis pendens* filed on

the remaining land and awarded Quenzer Farms costs and attorney fees in the amount of $35,340.60. Brighton appeals.

## II.

## STANDARD OF REVIEW

On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). This Court also freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

## III.

## ANALYSIS

Brighton argues the district court erred in granting Quenzer Farms' motion for summary judgment. Specifically, Brighton contends the district court erred in finding the PSA, as amended, unambiguously required Brighton to exercise its option to purchase Parcel 3 by April 15, 2022. Brighton further argues the district court erred in determining that Quenzer Farms did not breach the implied covenant of good faith and fair dealing. Lastly, Brighton argues the district court erred in dismissing its unjust enrichment claim. Quenzer Farms responds that summary judgment was proper and supported by the record. We hold there is no genuine issue of material fact regarding the disputed terms of the PSA and its amendments, which are unambiguous, and that summary judgment in favor of Quenzer Farms was proper.

Summary judgment is proper if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c). The movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254,

4

1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). Disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010).

## A.      Ambiguity

A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical. *Swanson v. Beco Constr. Co., Inc.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). Whether a contract is ambiguous is a question of law over which we exercise free review but interpreting an ambiguous term is an issue of fact. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010); *Swanson*, 145 Idaho at 62, 175 P.3d at 751. When interpreting a contract, this Court begins with the document's plain language. *Buku Props, LLC v. Clark*, 153 Idaho 828, 832, 291 P.3d 1027, 1031 (2012). In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument. *Id*.

Section 12 of the PSA outlines the options originally contemplated and agreed to by the parties. Of importance to this case, Section 12(b) reads, in relevant part:

> [Brighton] shall notify [Quenzer Farms] in writing, at the address for notices contained in Section 17 (the "Option Notice") of its election to exercise an Option thirty (30) days prior to the one year anniversary of the Closing Date. The first Option shall be exercised on the anniversary of the Closing Date. Each subsequent Option shall be noticed thirty days prior to the anniversary and exercised no later than the anniversary date of each succeeding year. . . . Notwithstanding the foregoing, [Brighton] may exercise more than one Option per year. If an Option is exercised early, it shall be considered the Option for the next year.

The PSA also set forth the parameters for acquiring option property. Those parameters include specific requirements for the "second Closing," the "third Closing, and the "fourth Closing." In addition, the PSA listed the "Purchase Price of Option Property" and "Trust Property" as follows:

| Parcel 1 | $120,000 | per acre |
|---|---|---|
| Second Closing | $123,600 | per acre |
| Third Closing | $127,308 | per acre |
| Fourth Closing | $131,127 | per acre |
| Fifth Closing | $135,061 | per acre |

| | | |
|---|---|---|
| Sixth Closing | $139,112 | per acre |
| Seventh Closing | $143,286 | per acre |
| Eighth Closing | $147,584 | per acre |

Section 12(d) of the PSA is labeled "Option Closing" and provides that the "closing date of each Option, unless otherwise agreed by the parties in writing, shall be the anniversary of the Closing Date for Parcel 1 (the 'Option Closing Date')." This same provision further provides that, if Brighton "exercises an Option early, the Option Closing Date shall be thirty (30) days following the date of Option Notice."

Although the First Amendment to the PSA modified portions of Section 12, none of those modifications are pertinent to the dispute in this case; the same is true with respect to the Second Amendment. However, the Third Amendment, effective March 1, 2021, expressly modified Section 12(b). The Third Amendment, regarding option timing, states:

> Notwithstanding the terms and conditions in Section 12(b) regarding the Options granted to [Brighton], the parties agree that the first Option Closing shall be no later than the one-year anniversary of the Purchase, or August 3, 2021, and each Option exercised thereafter shall be closed no later than one year from the previously closed Option. However, there shall be no minimum time frame in which [Brighton] can notify [Quenzer Farms] of its election to exercise the next Option.

The Third Amendment further provides: "In the event of a conflict between the provisions of the Agreement and those of this Amendment, the provisions of this Amendment shall control." And, "[u]nless otherwise specifically defined in this Amendment, all terms appearing initially capitalized herein shall have the same meaning given to them in the Agreement."

Three days later, on March 4, 2021, Brighton sent Quenzer Farms a letter with the subject line: "Revised Option Notice." The letter described "Parcel 2" and indicated the closing date for Parcel 2 "shall be no later than April 15, 2021, based on the conversations with [Quenzer Farms'] counsel." Quenzer Farms recorded a special warranty deed for Parcel 2 on April 15, 2021.

The parties' dispute began just over one year later after Quenzer Farms sent Brighton a letter dated April 19, 2022, notifying Brighton of its intent to no longer honor the terms of the PSA and, in particular, the option provisions included in the PSA because Brighton did not exercise its next option before April 15, 2021, i.e., within one year of the closing date for Parcel 2. Brighton thereafter attempted to exercise an option to purchase "Parcel 3," which Quenzer Farms rejected in light of its April 19, 2022, letter. The central question for purposes of summary judgment relates

6

to the parties' obligations in light of the Third Amendment, which modified Section 12(b) of the PSA.

Brighton advances two arguments in support of its claim that Quenzer Farms was not entitled to summary judgment. First, Brighton argues that the "only reasonable interpretation of the Third Amendment" is that it had until August 3, 2022, to close on its option to purchase Parcel 3. According to Brighton, "[t]his is the only reasonable interpretation of the Third Amendment that does not create a definition for purchase where none exists and does not ignore the August 3, 2022[,] date contained within the Third Amendment." Brighton alternatively argues that, if the Third Amendment is not construed in the manner it asserts is "the only reasonable interpretation," than the language of the Third Amendment is ambiguous because its "operative terms" are "inconsistent with the PSA and undefined (despite their capitalization)." Quenzer Farms responds that the language of the PSA and the Third Amendment is unambiguous and is contrary to Brighton's position. We agree with Quenzer Farms.

The plain language of the Third Amendment required Brighton to exercise and close each option after the first one "no later than one year from the previously closed Option." The first option closed on April 15, 2021. As such, Brighton was required to close on the second option no later than April 15, 2022. Brighton's implicit assertion that this interpretation of the plain language is unreasonable because it "create[s] a definition for purchase where none exists" and "ignore[s] the August 3, 2022[,] date contained within the Third Amendment" is unpersuasive. The "Purchase" referenced in relation to the "Option Timing" in the Third Amendment is a clear reference to the original purchase of Parcel 1. The Third Amendment provides that, "unless otherwise specifically defined in this Amendment, all terms appearing initially capitalized herein shall have the same meaning given to them in the" PSA. The PSA defines "purchase" as the sale of Parcel 1. Further, the inclusion of August 3, 2021, as the "one-year anniversary of the Purchase" is consistent with the July 31, 2020, closing date for Parcel 1. Section 12(d) of the PSA provides that, "if the Option Closing Date shall occur on a Saturday, Sunday or recognized holiday, the Option Closing Date shall occur on the next business day." July 31, 2020, was a Friday. The

7

Third Amendment appears to take into account that the one-year anniversary from July 31, 2020, would have fallen on a Saturday, thereby extending the deadline to August 3, 2021.[1]

Further, interpreting the language after the reference to August 3, 2021 in the Third Amendment does not require "ignor[ing]" that date. At the time the Third Amendment was executed, the first option for the purchase of Parcel 2 had not been exercised, much less closed. The closing for Parcel 2 did not occur until April 15, 2021; thus, the August 3, 2021, deadline in the Third Amendment still had meaning independent of any option exercised after the first. To the extent Brighton contends that August 3 was the deadline for the exercise of all options, such an interpretation would ignore the explicit language to the contrary requiring all options after the first to "be closed no later than one year from the previously closed Option." Stated differently, if the parties intended a closing deadline of August 3 regardless of any prior closing date, such a term would be easy to include, but it is not. The law does not allow courts to insert a different term after-the-fact. *See Bondy v. Levy*, 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992) (explaining that courts cannot revise a contract in order to change or make a better agreement for the parties than the one bargained for).

The language in the Third Amendment to the PSA is not ambiguous and does not support Brighton's interpretation. Accordingly, the district court did not err in granting Quenzer Farms' motion for summary judgment on Brighton's request for a declaratory judgment.

**B.      Implied Covenant of Good Faith and Fair Dealing**

In addition to seeking declaratory relief regarding the contractual requirements for exercising its purchase options, Brighton alleged a violation of the implied covenant of good faith and fair dealing based on the factual allegation that the parties had a "common understanding that future closings of Options would occur in the mid to late summer of each year and, in any event, prior to August 3 of each subsequent year." The district court granted summary judgment in favor of Quenzer Farms on this claim, concluding that "Quenzer Farms had no independent obligation to notify Brighton that the deadline was approaching to exercise their option" and that "Quenzer

---

[1]      We acknowledge that the next business day after July 31, 2021, would be Monday, August 2, 2021, but the one-day difference between this date and the August 3, 2021, anniversary date in the Third Amendment does not render the language ambiguous.

Farms was within their rights to terminate the contract pursuant to Section 12(g)" once Brighton failed to timely exercise its option.

Brighton argues that, "if this Court finds the Third Amendment ambiguous, then this Court should reverse the district court's decision to dismiss Brighton's implied covenant of good faith and fair dealing claim." Because we have concluded that the language in the Third Amendment is not ambiguous and because Brighton advances no other argument with respect to its good faith and fair dealing claim, we affirm the district court's judgment dismissing this claim.

## C.    Unjust Enrichment

Finally, Brighton challenges the district court's judgment dismissing its unjust enrichment claim. Brighton's unjust enrichment claim alleged that, "based on its rights with respect to the Option Property, [it] performed certain legal and development work for the benefit of the Option Property that favorably impacted the value of Option Property." The district court found that the work Brighton asserted as the basis for its unjust enrichment claim was contemplated by the PSA and its amendments. Specifically, the district court found the following term of the PSA regarding "Investigations and License for Entry" contradicted Brighton's argument:

> At its sole expense, [Brighton] may conduct studies, feasibility analysis, title review of existing surveys, environmental tests, financing approvals, applications, obtain governmental approvals such as a conditional use permit, and other investigations and/or reviews of the Property as deemed necessary by [Brighton].

The district court, therefore, disagreed with Brighton's claims that there was no contract addressing legal, entitlement, and development work. The district court also noted that, while the PSA contemplated termination in the event future options were not exercised, nowhere in the PSA did "Quenzer Farms agree to compensate Brighton for work done if Brighton terminate[d] the contract." Ultimately, the district court determined "a significant portion of the PSA was devoted to addressing these issues" and the PSA covered the same subject matter that was the basis of Brighton's unjust enrichment claim.

On appeal, Brighton again argues that, because it "performed certain legal, entitlement, and development work that benefited property currently owned by Quenzer Farms that Brighton has not exercised its option to purchase," Quenzer Farms has been unjustly enriched. Quenzer Farms responds that the district court correctly dismissed Brighton's unjust enrichment claim by

9

concluding that the PSA covered the same subject matter that formed the basis of the unjust enrichment claim.

A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof. *Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 558, 165 P.3d 261, 272 (2007). Under Idaho law, the doctrine of unjust enrichment is not permissible where there is an enforceable express contract between the parties that covers the same subject matter of the alleged unjust enrichment. *Id.*

We agree with the district court's conclusion that Brighton is not entitled to recover on its unjust enrichment claim because there is an enforceable express contract that covers the same subject that forms the basis of Brighton's unjust enrichment claim. That Brighton did not timely exercise its options under the PSA does not negate the existence of a valid contract that contemplated the work Brighton seeks compensation for on an unjust enrichment theory. The PSA provides that Brighton may perform work related to the subject property and that such work would be done at Brighton's own expense and discretion. Brighton has failed to show the district court erred in dismissing its unjust enrichment claim.

**D.      Costs and Attorney Fees on Appeal**

Quenzer Farms argues it is entitled to costs and attorney fees on appeal because Brighton's appeal fails "to show that the district court incorrectly applied well-established law that governs this case," recites arguments that failed before the district court, and essentially asks this Court to second-guess the district court's findings.[2] Quenzer Farms requests attorney fees pursuant to the terms of the contract,  I.C. § 12-120(3), I.C. § 12-121,[3]  and I.A.R. 41.

Section 15(c) of the PSA provides that, "in any suit, action or appeal therefrom to enforce or interpret this Agreement, the prevailing party shall be entitled to recover its costs incurred

_____

[2]      Brighton also requests an award of attorney fees "under Section 15(c) of the PSA, Idaho Code § 12-120(3), and costs under Idaho Appellate Rule 40" in the event it prevails in this appeal. Because it is not the prevailing party, Brighton is not entitled to costs or attorney fees on appeal.

[3]      Because we award attorney fees under the terms of the contract and I.C. § 12-120(3), we need not address the request for attorney fees pursuant to I.C. § 12-121.

therein, including reasonable attorneys' fees and disbursements." Idaho Code Section 12-120(3) provides for attorney fees to the prevailing party in a contract action involving a commercial transaction. In *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 287, 92 P.3d 526, 537 (2004), the Idaho Supreme Court awarded attorney fees pursuant to I.C. § 12-120(3) in an action for the purchase of real estate for development. Accordingly, Quenzer Farms is awarded attorney fees on appeal. As the prevailing party, Quenzer Farms is also awarded costs on appeal.

## IV.

## CONCLUSION

Brighton has failed to show the language in the PSA and its amendments is ambiguous and has failed to show the district court erred in granting summary judgment in favor of Quenzer Farms on Brighton's request for a declaratory judgment and on its claim for breach of the implied covenant of good faith and fair dealing. Brighton's unjust enrichment claim is impermissible because the terms of the PSA cover the same subject matter of the alleged unjust enrichment. Accordingly, the judgment in favor of Quenzer Farms is affirmed. Costs and attorney fees on appeal are awarded to Quenzer Farms.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.